# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 1, 2011          Decided June 14, 2011

No. 10-3019

UNITED STATES OF AMERICA,
APPELLEE

v.

EHIGIATOR O. AKHIGBE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00151-1)

*Veronica Renzi Jennings* argued the cause for appellant. With her on the briefs were *Lisa H. Schertler* and *David Schertler*.

*Leslie Ann Gerardo*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney. *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant, a primary care physician who served Medicaid patients in the District of Columbia, appeals his convictions for health care fraud and for making false statements relating to health care matters, as well as his 53-month sentence. Finding no merit in appellant's assertions of trial errors, we affirm the judgment of conviction. But because the district court gave an inadequate explanation for its above-Guidelines sentence and because this procedural defect amounted to plain error, we vacate the sentence and remand.

**I.**

During the time period relevant to this case, the Amerigroup Corporation, a private insurance company, served as the Medicaid administrator for the District of Columbia. Appellant Ehigiator Akhigbe entered an agreement to join Amerigroup's network of Medicaid providers as a primary care physician in December 2001.

To receive payments from Amerigroup for services provided to Medicaid patients, doctors submit claim forms—which at the time relevant to this case were called "HCFA 1500" forms or "HCFA" forms—on which they record their patients' identifying information, the dates of services, diagnosis information, and procedure codes specifying the type and level of service the physician provided (which in turn dictate the final charges). Although doctors have no obligation to personally fill out the forms, they must sign them and certify that the services not only were provided, but also were medically appropriate and necessary. Once Amerigroup receives and processes the forms, it sends providers an explanation of payment and, if appropriate, a check.

During Akhigbe's participation in Amerigroup's network, the company began noticing unusual trends in his claims, including billings for an abnormally large number of high-level visits, numerous claims for certain procedures that primary care physicians rarely perform, and repeated instances where visits following such procedures were billed as new diagnoses rather than as uncompensated follow-up visits. Prompted by these observations, Amerigroup launched an investigation of Akhigbe's practice and conducted an onsite audit in May 2004. Based on the sample of patient files audited, Amerigroup discovered that Akhigbe had documentation for only six percent of the services billed. Several weeks later, the company terminated its provider agreement with Akhigbe.

The matter was then referred to the FBI. At the conclusion of the FBI investigation—which involved surveillance, interviews with several of Akhigbe's patients and employees, and the seizure of records from Akhigbe's office—the government indicted Akhigbe on one count of health care fraud in violation of 18 U.S.C. § 1347 and 18 counts of knowingly and willfully making false statements in connection with the delivery of or payment for health care services in violation of 18 U.S.C. § 1035. In the health care fraud charge, the government alleged that over a period of several years, Akhigbe intentionally defrauded Amerigroup by submitting claims for visits and surgical procedures that never took place. The false statement charges related to 18 specific false HCFA claims, all submitted in June 2004. After dismissing one of the false statement counts, the government proceeded to trial on the other claims.

At trial, the government supported its allegations with testimony from patients and employees that numerous visits and procedures for which Akhigbe had billed Amerigroup

either never occurred or were misrepresented, as well as with evidence that he had created false progress report notes for patient files to cover up discrepancies. Over Akhigbe's objection, the government also introduced documentation of HCFA claims dating back to December 2002 that Akhigbe had submitted to Amerigroup. It used this evidence to demonstrate that Akhigbe had billed for so-called impossible days—i.e., days where the sum of the claim forms indicated Akhigbe had worked more than 24 hours. To link Akhigbe to false HCFA forms, the government relied on testimony by two former employees who claimed they could identify Akhigbe's handwriting on such forms. One of the former employees also testified that Akhigbe had told him that he did his own billing, although that employee never actually saw the doctor complete HCFA forms.

For its part, the defense denied that Akhigbe intentionally committed fraud or knowingly made false statements, arguing instead that any billing discrepancies were the result of negligent oversight. Defense counsel claimed that because Akhigbe had a busy medical practice, he delegated billing responsibilities to others who may have recorded false information. Although Akhigbe never testified, the defense did call two individuals who said they worked for the doctor. Both witnesses claimed they never saw Akhigbe fill out HCFA forms or otherwise involve himself with billing. They testified that Akhigbe relied on an employee named Ibrahim Mohammad to carry out such administrative tasks. According to those witnesses, Mohammad died of cancer in 2007.

Based on its mismanagement defense, Akhigbe's counsel asked the district court to provide a "good faith" instruction to the jury, which would have explained that good faith by Akhigbe constituted a complete defense to the charged offenses and that evidence proving only that he made "a

mistake in judgment or an error in management" could not establish fraudulent intent. Although declining to give that instruction, the district court did instruct the jury that the government had to prove beyond a reasonable doubt that Akhigbe defrauded a health care benefit program knowingly and willfully and that he knowingly made false statements in connection with such a program.

The jury convicted Akhigbe of the healthcare fraud charge and all but one of the false statement charges. At the sentencing hearing, Akhigbe and the government agreed that the applicable advisory Guidelines range was 33 to 41 months' imprisonment, and each argued for a within-Guidelines sentence—albeit at opposite ends of the range. The district court, however, sentenced Akhigbe to 53 months' imprisonment—an upward variance of 12 months.

On appeal, Akhgibe urges us to vacate his conviction, arguing that the district court committed evidentiary errors and improperly refused to give the good faith instruction he requested. Akhigbe also contends that we should vacate his sentence as procedurally unreasonable.

**II.**

Akhigbe first argues that the district court erred by admitting evidence of false HCFA claim submissions that predated the 17 remaining specific false statements from June 2004 charged in the indictment. According to Akhigbe, the district court should have excluded this evidence under Federal Rule of Evidence 403 because although the past claims were relevant to proving health care fraud, such evidence was cumulative given the government's ability to rely exclusively on evidence regarding the specific false statements. Admitting evidence concerning prior HCFA submissions, he asserts, risked confusion and prejudice

because it could have led the jury to convict Akhigbe for making false statements based on evidence that he made similar false statements in the past. In addition, Akhigbe faults the district court for failing to explain its Rule 403 balancing on the record.

We see no abuse of discretion in the district court's admission of evidence relating to false claims submitted before June 2004. *See Henderson v. George Washington Univ.*, 449 F.3d 127, 132–33 (D.C. Cir. 2006) (describing the standard of review for Rule 403 challenges). Moreover, although the district court never expressly weighed the prejudicial effect of the evidence against its probative value, "reversal or remand for failure to make such a balancing on the record is inappropriate" because "the considerations germane to balancing probative value versus prejudicial effect are readily apparent from the record." *United States v. Manner*, 887 F.2d 317, 322 (D.C. Cir. 1989) (internal quotation marks omitted). As the district court explained in ruling on Akhigbe's pretrial motion to exclude, the contested evidence was "highly probative on the issue of the existence of a scheme to defraud." Mem. & Order at 7, *United States v. Akhigbe*, No. 1:09-cr-00151-1 (D.D.C. Dec. 2, 2009), ECF No. 27 (included at J.A. 61). Specifically, the evidence allowed the government to establish a pattern of false claim submissions spanning the full period of the charged health care fraud, as well as to show that Akhigbe had billed for impossible days. Akhigbe contends that the probative value of this evidence was greatly diminished because the government had "evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). But the "mere showing of some alternative means of proof" does not necessarily indicate an abuse of discretion. *Id.* at 183 n.7. In any event, evidence relating to discrete false statements from a single month in 2004 was hardly equivalent in probative value to the evidence

Akhigbe sought to exclude. Balanced against its probative value, the risk that this earlier evidence of false HCFA submissions confused and prejudiced the jury with respect to the separate and discrete false statement charges seems minimal, particularly given that the district court instructed the jury that it could not consider this evidence for any purpose other than to decide whether Akhigbe was guilty of health care fraud. *See United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (explaining how jury instructions concerning the permissible and impermissible uses of evidence may decrease the risk of prejudice from the admission of prior bad act evidence).

Reduced to its core, Akhigbe's argument is that Rule 403 precluded the government from introducing highly probative direct evidence that he engaged in healthcare fraud over a several year period because the government also charged Akhigbe with making specific false statements during one month within that period. Given the implausibility of that Rule 403 argument, we have no trouble affirming the district court's admission of this evidence even absent express on-the-record balancing.

Next, Akhigbe contends that the district court improperly prevented him from introducing testimony by his former counsel, Jacob Stein, who, apparently to bolster Akhigbe's good faith defense, would have testified about his efforts to clear up whether Akhigbe owed money to Amerigroup after their contractual relationship ended. Akhigbe claims this evidentiary ruling violated his Fifth and Sixth Amendment right to call favorable witnesses. Although we normally review constitutional questions *de novo*, *see United States v. Young*, 107 F.3d 903, 910 (D.C. Cir. 1997), the misapplication of established evidentiary rules gives rise to a constitutional violation only in "rare" cases where "the error

deprives a defendant of a fair trial," *United States v. Lathern*, 488 F.3d 1043, 1046 (D.C. Cir. 2007). Because Akhigbe has come nowhere close to showing that the error he asserts rises to that level, we apply ordinary abuse of discretion review. *See id.*

Akhigbe insists there was a nonhearsay purpose for Stein's planned testimony about a conversation he had with an unidentified individual at Amerigroup who allegedly assured Stein that the letter the company sent Akhigbe concerning his negative balance was "a mistake." But the record demonstrates that Akhigbe actually sought to introduce this out-of-court statement for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) (defining hearsay). Responding to the government's objection to Stein's proposed testimony, Akhigbe's counsel pointed out that a government witness testified about Akhigbe's outstanding debt to Amerigroup, leading counsel to ask the district court, "Your Honor, how does the court intend for me to dispute the evidence as laid out there now . . . that he still owes it?" Trial Tr. at 78 (Dec. 14, 2009). Stein's testimony, Akhigbe's counsel indicated, was "the only way [he could] get in evidence . . . that [Akhigbe] did not owe that money." *Id.* at 79. Using Stein's testimony about what an Amerigroup representative told him to show that Akhigbe owed no money would have been classic hearsay not covered by any authorized exception. *See* Fed. R. Evid. 802; *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007).

Akhigbe argues that the proposed testimony was relevant to establishing his state of mind because it showed that he acted diligently upon receiving the letter from Amerigroup and that he reasonably believed the matter was resolved after Stein's conversation with the company. Under such a theory, Akhigbe contends, the testimony would have been relevant

regardless of whether he really did owe Amerigroup money because it would have helped to bolster his good faith defense. But by assuring the district court that Stein would refrain from discussing any attorney-client conversations to avoid opening the door to privileged communications, Akhigbe ruled out that nonhearsay purpose. Given this self-imposed limitation, and absent other evidence concerning what Stein told Akhigbe about his conversation with Amerigroup, we see no error in the district court's conclusion that Akhigbe lacked any relevant nonhearsay use for Stein's testimony.

This brings us finally to Akhigbe's argument that the district court erred by refusing to give the good faith instruction he requested. A defendant is entitled to a requested theory-of-defense instruction if the record contains "sufficient evidence from which a reasonable jury could find" for the defendant on his theory. *United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998) (internal quotation marks omitted). Such evidence may be direct or circumstantial. *See United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008) (concluding that the defendant was entitled to a good faith instruction even though he had declined to testify because circumstantial evidence permitted a reasonable jury to find that he had acted in good faith). In reviewing *de novo* a challenge to the district court's refusal to give a requested instruction, we "view[] the instructions as a whole," *United States v. Gambler*, 662 F.2d 834, 837 (D.C. Cir. 1981), and reverse only where the court failed to convey adequately to the jury "the substance of [a] requested instruction" to which the defendant was entitled, *Hurt*, 527 F.3d at 1351.

Here, we have no need to decide whether the district court should have given the requested good faith instruction based on the two defense witnesses' testimony that Akhigbe

relied on others to prepare HCFA forms because the court adequately conveyed the substance of that instruction in its explanation of the state of mind elements of the charged offenses. The district court instructed the jury that to convict Akhigbe of health care fraud, it had to find beyond a reasonable doubt that he

> engaged in the scheme knowingly and willfully, and that is with the intent to defraud. The term knowingly means that the act was done voluntarily and *not because of mistake or accident*. . . . The term willfully means that the defendant knew his conduct was unlawful and intended to do something that the law forbids. That is to find the defendant acted willfully you must find that the evidence proved beyond a reasonable doubt that he acted with a purpose to disobey or disregard the law.

Trial Tr. at 39 (Dec. 16, 2009) (emphasis added). The court explained that the false statement charges had the same knowledge requirement, which the government also had to establish beyond a reasonable doubt. *Id.* at 43. These instructions "substantially covered the same ground" as the good faith instruction Akhigbe sought, *Hurt*, 527 F.3d at 1352, because they made clear to the jury that if it believed Akhigbe's argument and concluded that he submitted false claims to Amerigroup due to mere negligence, then it had to acquit.

Akhigbe nonetheless argues that the instructions were inadequate because they nowhere "addressed explicitly [his] defense that he had a good faith but mistaken belief that the HCFA claims were being submitted accurately by his medical practice." Appellant's Reply Br. 17. But the instruction he proposed was also fairly general, stating that "[e]vidence

which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent." To be sure, the district court's instruction, although stressing that the jury was to convict only if it found intentional wrongdoing as opposed to mistakes or accidents, never used the phrase "error in management," but that provides no reason to believe the jury might have conflated mismanagement with knowing and willful misconduct.

For all of these reasons, we affirm Akhigbe's conviction and turn to his sentencing challenge.

### III.

Akhigbe argues that the district court committed procedural error by failing to give specific, individualized reasons—both orally and in writing—for the non-Guidelines sentence it imposed.

"Given the broad substantive discretion afforded to district courts in sentencing, there are concomitant procedural requirements they must follow." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008). A district court begins by calculating the appropriate Guidelines range, which it treats as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate," the court considers all of the section 3553(a) sentencing factors and undertakes "an individualized assessment based on the facts presented." *Id.* at 49–50. If the court "decides that an outside-Guidelines sentence is warranted," it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. Once the district court determines the sentence, section

3553(c) requires it to "state in open court the reasons for its imposition of the particular sentence," and if the sentence falls outside the advisory Guidelines range, to provide "the specific reason" for the departure or variance. 18 U.S.C. § 3553(c)(2). The court must also articulate in writing and "with specificity" its reasons for departing or varying from the advisory Guidelines. *Id*. "When a district judge fails to provide a statement of reasons, as [section] 3553(c) requires, the sentence is imposed in violation of law." *In re Sealed Case*, 527 F.3d at 191.

In sentencing Akhigbe, the district court mentioned three section 3553(a) factors that it said were significant to its sentence: the severity of the offense, deterrence, and the need to protect the public from the defendant and his actions. 18 U.S.C. § 3553(a)(2)(A)–(C). Beginning with severity, the court remarked:

> Even as we speak right now, a raging debate going on in this country is the matter of healthcare. And Congress is going to decide whether there should be a healthcare bill, or there should not be a healthcare bill. And regardless of what side you fall on, . . . both sides agree that the system is broken and should be repaired. And one of the faults of the healthcare system in this country is the cost. And much of the cost is generated by fraud in the system. And it is people like Dr. Akhigbe who have committed fraud that drives up the cost of the healthcare numbers. Taxpayers have to pay for this fraud. That's in general. Specifically, individual patients have to pay for this fraud.

Sent'g Tr. at 23 (Mar. 19, 2010). The district court then described "a couple of things that . . . stood out in [its] mind

during this particular trial," such as the testimony that Akhigbe submitted claims for office hours allegedly held on Thanksgiving Day, as well as the testimony of one of Akhigbe's female patients who had appeared "shocked, surprised[,] and angered" when she was asked about treatment for a cyst on her ovary that never actually took place. *Id.* at 23–24. For the district court, this woman's testimony brought to mind the possibility that "should [she] in the future apply for medical insurance, . . . she could possibly be denied insurance because of a pre-existing condition." *Id.* at 24. Turning to the other two section 3553(a) factors, the district court stated that because "Dr. Akhigbe will no longer be able to practice medicine . . . any sentence that he gets will be a deterrent." *Id.* "And also," the court added, "with respect to protecting the public from Dr. Akhigbe and people like [him], that will also be addressed when sentence is imposed." *Id.*

After reciting the undisputed Guidelines range of 33 to 41 months, the district court stated that it was "convinced that a sentence outside of the guideline range is appropriate" and announced a sentence of 53 months' imprisonment. *Id.* at 25. Subsequently, in its written Statement of Reasons—which remains under seal except to the extent this opinion refers to information therein, *see United States v. Wilson*, 605 F.3d 985, 1035 n.7 (D.C. Cir. 2010) (providing the same)—the district court gave the following explanation:

> A) Defrauding the health care system contributes to the rising cost of health care in this country. In addition, a sentence above the guidelines will promote respect for the law and provide just punishment for the offense. B) 12 months above the guidelines is reasonable. It will provide adequate deterrence and protect the public.

Ordinarily, we review a district court's sentence for abuse of discretion. *See Gall*, 552 U.S. at 51. The first step of that review, and the only one at issue here, requires that we ensure the district court "committed no significant procedural error," which includes "failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. In this case, however, our review is for plain error because, as Akhigbe concedes, he failed in the district court to object to the adequacy of that court's reasoning. To establish plain error, Akhigbe must show that "(1) there is in fact an error to correct; (2) the error is plain; (3) it affects substantial rights; and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (internal quotation marks omitted).

Reviewing the sentencing proceedings as a whole, including the district court's oral and written statements, we conclude that the court plainly erred in failing to provide an adequate explanation for the unsought above-Guidelines sentence it imposed. Although the district court did recite sentencing factors that it said informed its decisionmaking, contrary to section 3553(c) and controlling case law it never explained why those factors justified Akhigbe's particular sentence.

Devoting most of its discussion at sentencing to its views about the severity of Akhigbe's offense, the district court commented generally and somewhat hyperbolically about the negative consequences of health care fraud, which the court said generates "much of the cost" in the United States health care system. Sent'g Tr. at 23. Although these broad observations about the social costs of health care fraud—assuming their correctness—are certainly relevant to sentencing, they would apply equally to any defendant

convicted of this offense and thus provide no individualized reasoning as to why the court believed a sentence 12 months above the Guidelines range was appropriate for this particular defendant. True, as the government emphasizes, the district court did go on to discuss specific evidence from Akhigbe's trial, saying that it would "never forget" the testimony that Akhigbe submitted claims for office visits on Thanksgiving. *Id.* The district court also noted the effect Akhigbe's fraud had on his patients, as exemplified by the woman who had to testify that Akhigbe never treated her for an ovarian cyst and who, the district court surmised, might face impediments to obtaining health insurance due to Akhigbe's fraud. But the district court never explained whether or why this testimony demonstrated that this defendant's fraud was more harmful or egregious than the typical case. Nor did the district court suggest that it believed the Guidelines range for health care fraud was too low even in the mine-run case. *See Kimbrough v. United States*, 552 U.S. 85, 101–02, 109 (2007) (indicating that a district court generally may "consider arguments that 'the Guidelines sentence itself fails properly to reflect § 3553(a) considerations' " but also suggesting that "closer [appellate] review may be in order when the sentencing judge" reaches such a judgment (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007))). As a result, we can only speculate as to why the district court believed the severity of Akhigbe's offense merited a 53-month sentence.

The district court's brief mention of two other section 3553(a) factors sheds no additional light on the sentence. As to the need to "protect[] the public," the court said that this factor would "be addressed when sentence is imposed." Sent'g Tr. at 24. But mere "recitation of [a] § 3553(a) factor[] without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review." *United States v. Carter*, 564 F.3d

325, 329 (4th Cir. 2009). As to deterrence, the court indicated that "*any* sentence that [Akhigbe] gets will be a deterrent" because he "will no longer be able to practice medicine." Sent'g Tr. at 24 (emphasis added). But if in the district court's view *any* sentence would "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), then this factor could provide no support for sentencing Akhigbe to 53 months' imprisonment, *see id.* § 3553(a) ("The court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in [section 3553(a)(2)]." (emphasis added)).

Finally, the district court's written statement of reasons was even less specific than its oral explanation. The court's assertions that the sentence would "promote respect for the law[,] . . . provide just punishment for the offense[,] . . . provide adequate deterrence[,] and protect the public" fall well short of section 3553(c)(2)'s requirement to state the reasons for giving a non-Guidelines sentence "with specificity." And as the government conceded at oral argument, the district court's reference to healthcare fraud "contribut[ing] to the rising cost of health care in this country" would have applied to any defendant convicted of health care fraud. *See* Oral Arg. Tr. at 22:05–22:20, 23:16–23:25, 25:03–25:12. Although acknowledging the statement's deficiencies, the government suggests that what the district court wrote was good enough when read in conjunction with its oral explanation. But section 3553(c)(2)'s writing obligation is no "mere formality." *In re Sealed Case*, 527 F.3d at 192. "The requirements that a sentencing judge provide a specific reason for a departure and that he commit that reason to writing work together to ensure a sentence is well-considered." *Id.* Written statements offering only vague generalities that fail to discuss meaningfully the particular

defendant and his particular crime do not serve these important purposes.

In *In re Sealed Case*, we found plain procedural error where the district court imposed an above-Guidelines sentence "without providing any explanation at all" in open court and also submitted no written statement of reasons. *Id.* at 192–93 (indicating that the error was "obvious enough"). To be sure, the facts of this case are not quite so extreme, but we nonetheless believe that the district court's oral and written statements are clearly insufficient. We thus conclude not only that the district court erred procedurally in sentencing, but also that its error was plain. In reaching this conclusion, we recognize that district courts necessarily and appropriately exercise professional judgment in determining how much reasoning to give when explaining discretionary sentencing decisions. In many cases, such as where the parties have presented only "straightforward, conceptually simple arguments" and the district court concludes a Guidelines sentence is appropriate, a fairly brief recitation of reasons will satisfy the court's procedural obligations. *Rita*, 551 U.S. at 356–57. Moreover, although a district court must explain its decision to impose a non-Guidelines sentence with specificity and "ensure that the justification" for its sentence "is sufficiently compelling to support the degree of the variance," *Gall*, 552 U.S. at 50, we do not ask the court to do the impossible and provide detailed reasoning as to why it chose, for example, to vary upward by 12 months rather than by 11 or 13. But under the circumstances of this case, where the district court imposed a sentence that varied significantly from both the advisory Guidelines range and from the sentences the parties sought, the brief and generalized explanation the court provided is plainly inadequate to satisfy section 3553(c)'s requirements.

18

Under *In re Sealed Case*, Akhigbe has also established the other elements of plain error review. The district court's failure to explain adequately the sentence it imposed is "prejudicial in itself because it precludes appellate review of the substantive reasonableness of the sentence, thus seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings." 527 F.3d at 193 (internal quotation marks and citations omitted). Furthermore, a satisfactory statement of reasons is essential "to promote the perception of fair sentencing" and to allow "the public to learn why the defendant received a particular sentence." *Id.* (internal quotation marks omitted).

Accordingly, we exercise our discretion to notice this plain sentencing error, vacate the sentence, and remand for resentencing.

*So ordered*.