# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 13, 2011      Decided December 27, 2011

No. 10-3097

UNITED STATES OF AMERICA,
APPELLEE

v.

LISA LOCKE, ALSO KNOWN AS LISA DAVIS-LOCKE, ALSO
KNOWN AS LISA DAVIS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00259-1)

*Mary E. Davis*, appointed by the court, argued the cause for the appellant.

*Leslie Ann Gerardo*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *Roy W. McLeese III* and *Thomas E. Zeno*, Assistant United States Attorneys, were on brief.

Before: GINSBURG, HENDERSON and KAVANAUGH, *Circuit Judges*.[1]

---

[1]   As of the date the opinion was published, Judge Ginsburg had taken senior status.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Lisa Locke (Locke or Defendant) appeals her sentence of 60 months' imprisonment resulting from her convictions of possession of stolen mail and aggravated identity theft. Locke claims that the district court erred when it "failed to consider" two mitigating arguments she advanced. Appellant's Br. at 11. Because the record reflects that the district court in fact considered both arguments and provided a "reasoned basis" for Locke's sentence, *see Rita v. United States*, 551 U.S. 338, 356 (2007), we affirm.

**I.**

Between January 2007 and April 2008, Locke participated in a conspiracy to possess stolen mail and present forged checks to banks and check-cashing stores throughout the Washington, D.C. area. The fifteen-month conspiracy caused an actual loss of more than $120,000 but had an intended loss of more than $340,000. Locke was subsequently charged with conspiracy, *see* 18 U.S.C. § 371, nine counts of possession of stolen mail, *see id.* § 1708, three counts of possession of a forged security, *see id.* § 513(a), seven counts of bank fraud, *see id.* § 1344, and nineteen counts of aggravated identity theft, *see id.* § 1028A(a)(1).

On April 27, 2010, Locke and the government entered into a plea bargain. Locke agreed to plead guilty to one count of possession of stolen mail and one count of aggravated identity theft; the government agreed to dismiss all remaining counts and not to seek a total sentence of more than 60 months' imprisonment. The parties further stipulated to the appropriate offense level under the United States Sentencing Guidelines (U.S.S.G. or Guidelines) for the possession of

stolen mail charge.[2] The government, however, reserved the right to seek a four-level increase on the ground that Locke was an "organizer or leader" of a conspiracy involving more than five participants. *See* U.S.S.G. § 3B1.1(a). With this four-level increase and with a criminal history category of III, her Guidelines range was between 57 and 71 months, consecutive to the mandatory minimum sentence of 24 months on the charge of aggravated identity theft.

In her sentencing memoranda and during the sentencing hearing, Locke argued that a number of mitigating factors warranted a below-Guidelines sentence. Locke asked the court to consider her "desire to meet with prosecutors and report on the crimes of other[] co[-] conspirators." Def.'s Mem. in Aid of Sentencing at 4, *United States v. Locke*, Cr. No. 09-259-01 (D.D.C. Sept. 21, 2010) (Def.'s Mem.). She also asserted that the intended loss calculation was almost three times the actual loss and, thus, a Guidelines range based on the intended loss, *see* U.S.S.G. § 2B1.1, overstated the severity of the crime. Def.'s Mem. at 6. The government countered that Locke was "the leader of a long running conspiracy . . ., causing harm to more than 50 victims," Omnibus Sentencing Mem. at 6, *United States v. Locke*, Cr.

---

[2]    Specifically, the parties agreed that the base level for the offense was six, *see* § 2B1.1(a)(2), with a twelve-level increase because the intended loss exceeded $200,000, *see* § 2B1.1(b)(1), and four additional levels because the crimes involved 50 or more victims, *see* § 2B1.1(b)(2)(B). The parties further agreed to a two-level decrease for acceptance of responsibility, *see* § 3E1.1(a), and a one-level decrease for timely notice of intent to enter a plea, *see* § 3E1.1(b). Locke's aggravated identity theft charge carried a mandatory minimum sentence of 24 months to be served consecutively. *See* 18 U.S.C. § 1028A(b)(2) (except as otherwise provided, "no term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law").

No. 09-259-01 (D.D.C. Sept. 20, 2010), and that, although Locke had agreed to provide information about her co-conspirators, she had refused to provide information about her son and her brother, both of whom had unrelated criminal cases pending in D.C. Superior Court. Tr. of Sentencing at 45, *United States v. Locke*, Cr. No. 09-259-01 (D.D.C. Dec. 10, 2010) (Sentencing Tr.) ("We know she knows a lot. She didn't want to talk about everything, so we didn't want to hear from her. That was her choice."). In light of these factors, the government recommended a sentence of 36 months on the charge of possessing stolen mail as well as the mandatory minimum sentence of 24 months, consecutive, on the charge of aggravated identity theft, for a total sentence of 60 months.

At the sentencing hearing, the district court first addressed the appropriate U.S.S.G. range for the possession of stolen mail charge. After weighing the evidence regarding Locke's involvement in the conspiracy, the court concluded that Locke "should get the four-level increase for her role . . . as an organizer or leader of the conspiracy, which involves more than five participants." *Id.* at 21. Then the court turned to Locke's overall sentence on both charges. In announcing the sentence, the district court did not explicitly address each of Locke's arguments for a below-Guidelines sentence. It did, however, explain the basis for the sentence it imposed:

> Now, let me focus on the offense here. It's a very serious, significant offense, with an impact on many, many victims, and a result and an injury that strikes at the heart of commercial and personal interests in the community that are of fundamental importance, particularly the personal interests, both monetarily, but also in terms of privacy and identification concerns. Over $120,000 of actual loss occurred, and well over $300,000 was the intended or in some instances some part of that attempted loss.

This was a fairly long-term conspiracy. It didn't take place over just a couple of days or a couple of weeks. It extended over many months. It was well planned. And that planning and execution included a significant role by the [D]efendant.

And in some ways, . . . I don't feel that the [D]efendant has shown complete acceptance of responsibility and remorse. She has for doing bad things, but she hasn't for what seems to me to be the totality of the conduct she was engaged in.

\* \* \*

When I consider all of the factors under 3553(a), including appropriate punishment, deterrence both with respect to Ms. [Locke] and others, protection of the public and the community, and everything else that is included in the assessment under 3553(a), I conclude that the [D]efendant should receive a substantial period of incarceration . . . .

*Id.* at 49-51. The court sentenced Locke to 60 months' imprisonment: 36 months for possession of stolen mail and 24 months, consecutive, for aggravated identity theft. While acknowledging that it was a "substantial period of incarceration," the court noted that the sentence was "well below" the Guidelines recommendation of 24 months for aggravated identity theft plus 57 to 71 months for possession of stolen mail, "if you take even the low point of that [G]uideline." *Id.* at 51.

Locke now appeals her sentence, claiming that the district court erred in "fail[ing] to consider" her unrequited efforts to cooperate with the prosecution, Appellant's Br. at 11, and her claim that basing her sentence in part on intended, not actual, loss, "substantially overstates the seriousness of the offense," *id.* at 13 (internal quotation marks omitted).

**II.**

In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court declared the Sentencing Guidelines to be advisory only and instructed appellate courts to review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 244-45, 260-61. After *Booker*, our review of sentencing challenges that have been properly preserved is for abuse of discretion under a two-step analysis. *See Gall v. United States,* 552 U.S. 38, 51 (2007). At the first step, which is the only one at issue here, "we ensure the district court 'committed no significant procedural error,' which includes 'failing to adequately explain the chosen sentence.' " *United States v. Akhigbe*, 642 F.3d 1078, 1085 (D.C. Cir. 2011) (quoting *Gall*, 552 U.S. at 51).[3]

The more demanding plain error standard of review applies where a defendant fails to raise a claim at his sentencing hearing or fails to object to a district court's ruling. *See In re Sealed Case,* 349 F.3d 685, 690–91 (D.C. Cir. 2003); *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994). Because Locke did not challenge the adequacy of the district court's statement of reasons below, we review her claim for plain error. *United States v. Anderson,* 632 F.3d 1264, 1269 (D.C. Cir. 2011) ("Because he did not object to the district court's statements at the sentencing hearing, we review [the defendant's] sentencing-related claims for plain

---

[3] At the second step, we review the overall reasonableness of the sentence to ensure that it is objectively reasonable in light of the sentencing factors in section 3553(a). *United States v. Wilson*, 605 F.3d 985, 1033-34 (D.C. Cir. 2010); *United States v. Olivares*, 473 F.3d 1224, 1226 (D.C. Cir. 2006). The factors in section 3553(a) include the nature of the offense, the defendant's history and the need to promote deterrence, avoid unwarranted sentencing disparities and provide restitution to any victims. *See* 18 U.S.C. § 3553(a).

error."). To prevail under this standard, Locke must demonstrate that the district court: (1) committed error; (2) that is plain; and (3) that affects her substantial rights. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three conditions are met, and if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings," *id.*, an appellate court may then exercise its discretion to notice a forfeited error.

Importantly, this is not a case in which the defendant was given no opportunity to object to the district court's sentencing determination at sentencing. *See* FED. R. CRIM. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."); *see also United States v. Mojica-Rivera*, 435 F.3d 28, 35 (1st Cir. 2006) ("As [the defendant] had no opportunity to object to the conditions of supervised release, our review is for abuse of discretion."); *United States v. Warden*, 291 F.3d 363, 365 n.1 (5th Cir. 2002) (reviewing for abuse of discretion challenge to supervised release imposed for first time in written judgment). In fact, the sentencing judge gave Locke ample opportunity to object. After explaining his reasoning, he asked the parties if they "know of any reason other than reasons already stated and argued why the sentence should not be imposed as I have just indicated," to which Locke's lawyer replied "[n]othing else, [y]our Honor." Sentencing Tr. at 56.

We conclude that the district court committed no error, much less plain error, in its statement of reasons for Locke's sentence. The Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq.*, requires the sentencing court "at the time of sentencing" to "state in open court the reasons for its imposition of [a] particular sentence." *Id.* § 3553(c). This provision requires that the court provide a "reasoned basis" for its decision and consider all "nonfrivolous reasons"

asserted for an alternative sentence. *Rita*, 551 U.S. at 356-57. "These requirements serve two primary purposes: they develop an adequate record so that appellate courts can perform substantive review, and they guarantee that sentencing judges continue 'to consider every convicted person as an individual.' " *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) (quoting *Gall*, 552 U.S. at 52). That said, section 3553(c) does not require "a full opinion in every case." *Rita*, 551 U.S. at 356. Nor does it require the court to address expressly each and every argument advanced by the defendant. *See id.* at 359 (although judge did not "explicitly [state] that he had heard and considered the evidence and argument [raised by defendant]," explanation was adequate). In fact, so long as the judge provides a "reasoned basis for exercising his own legal decisionmaking authority," we generally presume that he adequately considered the arguments and will uphold the sentence if it is otherwise reasonable. *Rita*, 551 U.S. at 356; *United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005) ("It is true that the district court did not specifically refer to *each* factor listed in § 3553(a). But we have not required courts to do so." (emphasis in original)); *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005) ("[W]e ordinarily presume a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance.").

In this case, Locke has proffered nothing to rebut that presumption. To the contrary, the record makes plain that the district court carefully considered and evaluated both arguments Locke claims it ignored. The court engaged in an extended colloquy with Locke's counsel regarding her allegedly thwarted desire to cooperate with the government. The court repeatedly asked Locke's lawyer how the assertion should be considered, Sentencing Tr. at 42 ("Then how should I take it into account?"), and questioned whether

Locke was in fact alleging "some impropriety with respect to the plea," *id.* The court then confirmed that Locke was asking for "a sentencing advantage" based on her "willing[ness] to give information." *Id.* at 43. It explicitly acknowledged Locke's second argument regarding the gap between the actual and intended loss, noting that it was "[t]rue enough" that the actual loss was only a third of the intended loss. *Id.* at 33. It discounted this point, however, on the basis that much of the intended loss was attributable to "unsuccessful check[-] cashing efforts" by Locke or her co-conspirators. *Id.* The court reasserted this point in announcing Locke's sentence. *See id.* at 49 ("Over $120,000 of actual loss occurred, and well over $300,000 was the intended or in some instances *some part of that attempted loss.*" (emphasis added)).

Finally, the court provided a well-reasoned basis for its decision. After outlining the seriousness of the offense, the length of the conspiracy, the "significant role" played by Locke and its doubts about her remorse, it concluded that a "substantial period of incarceration" was warranted. Sentencing Tr. at 48-52. The court's discussion of its reasoning, which spans more than three pages of the transcript, more than satisfies its sentencing obligation. *See In re Sealed Case*, 527 F.3d at 191 ("district judge need not consider every § 3553(a) factor in every case"); *United States v. Wykle*, 429 Fed. App'x. 205, 207 (4th Cir. 2011) ("While a district court must consider the statutory factors and explain its sentence, it need not explicitly reference § 3553(a) or discuss every factor on the record.").

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*