# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 15, 2012          Decided November 30, 2012

No. 11-3030

UNITED STATES OF AMERICA,
APPELLEE

v.

ANDREW WARREN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00158-1)

*Brian W. Shaughnessy* argued the cause for the appellant.

*Peter S. Smith*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *Roy W. McLeese III, Elizabeth Trosman* and *Julieanne Himelstein*, Assistant United States Attorneys, were on brief.

Before: SENTELLE, *Chief Judge*, HENDERSON and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Andrew Warren (Warren) appeals his 65-month sentence of imprisonment, arguing that it is both procedurally and substantively defective. Among other arguments, Warren contends that his Post-Traumatic Stress Disorder (PTSD), depression and substance abuse issues made it substantively unreasonable to sentence him to more than a brief period of incarceration, followed by treatment at a private facility. We disagree and affirm the district court.

**I.**

Warren was once a rising star in the Central Intelligence Agency (CIA). In 2007 and 2008, the CIA assigned Warren to work as a high-level official for the United States Embassy in Algeria, where he lived in government housing. Sometime in 2007, Warren met Person A, a Muslim woman and Algerian national. On February 17, 2008, Warren invited Person A to his home where he served her adulterated alcoholic drinks that caused her to pass in and out of consciousness. While she was semi-conscious, Warren moved her to his bed, removed all of her clothing and had sexual contact (but not intercourse) with her. Person A later wrote a text message to Warren accusing him of abuse, to which Warren replied that he was sorry.

Due to her religion and Algerian culture, Person A did not report Warren to law enforcement or mention his conduct to her family. Eventually, in September 2008, she reported Warren to an official at the United States Embassy in Algeria. In investigating the allegations, special agents from the United States Department of State's Bureau of Diplomatic Security executed a search warrant on Warren's Algerian residence and found child pornography, Valium, Xanax and a handbook on the investigation of sexual assaults. As an expert

witness explained, Valium and Xanax mixed with alcohol could have caused the symptoms Person A experienced at Warren's residence. The government also discovered that in September 2007, before his assault on Person A, Warren had allegedly drugged and sexually abused Person B, another Algerian Muslim woman. Person B, like Person A, was afraid to report Warren's conduct due to her religion and culture.

In March 2009, the CIA terminated Warren. In June 2009, Warren was indicted on one count of sexual abuse committed in the special maritime and territorial jurisdiction of the United States, *see* 18 U.S.C. § 2242(2).

In April 2010, Warren failed to appear for a status hearing and the district court issued a bench warrant for his arrest. In its search for Warren, the government discovered that Warren's neighbor in Norfolk, Virginia had recently filed a complaint against Warren for exposing himself to her. Several days later, the police found Warren at a Norfolk motel. He appeared to be under the influence of drugs and was carrying a "fully loaded 9 millimeter semi-automatic Glock pistol in the front pocket of his shorts." Supplemental Appendix (SA), Tab F at 7. Upon being confronted by the police, Warren made several motions toward the gun, physically resisted arrest and had to be subdued with a taser.

On June 7, 2010, Warren pleaded guilty to a superseding information on two counts: (1) abusive sexual contact (18 U.S.C. § 2244(a)(1)); and (2) possession of a firearm by an unlawful user of a controlled substance (18 U.S.C. § 922(g)(3)). The district court accepted the plea agreement and Warren's guilty plea. In the plea agreement, the parties agreed that the proper range under the United States Sentencing Guidelines, *see* United States Sentencing

Guidelines Manual (Guidelines), was between 27 and 33 months' imprisonment.

Warren filed a sentencing memorandum arguing for a below-Guidelines sentence because he suffered from PTSD, depression and substance abuse problems. At a January 31, 2011 pre-sentencing hearing held to hear from Warren's psychiatrist, the psychiatrist testified that the United States Bureau of Prisons had only one facility—in Lexington, KY—that could treat Warren's so-called "dual diagnos[e]s" of substance abuse and mental problems. SA, Tab I at 54-55. Because the program had limited space and thus a long waiting period, however, he recommended that Warren be treated at a private facility called Behavioral Health of the Palm Beaches, located in Lake Park, Florida.

At the March 3, 2011 sentencing, the court rejected Warren's argument that his "dual diagnos[e]s" entitled him to a shorter sentence. Instead, while the court agreed that the Guidelines range was 27 to 33 months' imprisonment, it imposed an upward variance and sentenced Warren to 65 months in prison. The court explained its reasons for the sentence. On the one hand, it noted, Warren had an excellent career, the loss of his job was painful, he suffered from mental and substance abuse problems and he had "served this country well." Appendix (A) 8-9, 11. On the other hand, the court explained, an above-Guideline variance was appropriate because, *inter alia*, (1) Warren was a high-level United States officer with diplomatic immunity; (2) he took a "calculated risk" in victimizing Person A, a married Muslim woman, who he believed would not complain to authorities (for religious reasons) and could not seek legal recourse because of Warren's diplomatic immunity; (3) Person A's victim impact statement was "overwhelming to read" because of the harm Warren caused to her life; (4) "there has to be a clear message

that people should not abuse others in other cultures who may not be in a position to come forward and speak for themselves" and (5) if released, Warren would pose a danger to himself and the community based on his conduct on arrest. *See* A 13-15.

The district court also recommended to the Bureau of Prisons that Warren be placed in the Lexington program but, on the recommendation of Warren's counsel, changed its recommendation to a facility in Butner, NC. Warren timely appealed his sentence pursuant to 18 U.S.C. § 3742(a).

## II.

We review a sentencing challenge under a two-step analysis. *United States v. Locke*, 664 F.3d 353, 356 (D.C. Cir. 2011). First, we determine whether the district court committed significant procedural error. *Id.* (quoting *United States v. Akhigbe*, 642 F.3d 1078, 1085 (D.C. Cir. 2011)). Second, "we review the overall reasonableness of the sentence to ensure that it is objectively reasonable in light of the sentencing factors in [18 U.S.C. § 3553(a)]." *Id.* at 356 n.3 (citing *United States v. Wilson*, 605 F.3d 985, 1033-34 (D.C. Cir. 2010) (per curiam); *United States v. Olivares*, 473 F.3d 1224, 1226 (D.C. Cir. 2006)).

## A.

Warren makes several procedural error arguments regarding the district court's explanation of his sentence. Because Warren failed to make the objections at sentencing, we review for plain error. *See United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010). To establish plain error, Warren must show "(1) there is in fact an error to correct; (2) the error is plain; (3) it affects substantial rights; and (4) it

seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

Warren first argues that the court failed to adequately explain its reasons for imposing an upward variance. We disagree. The Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq.*, requires the district court to explain, at the time of sentencing and in open court, its reasons for the defendant's sentence. *See Locke*, 664 F.3d at 357 (quoting 18 U.S.C. § 3553(c)). Additionally, if a sentence "is not of the kind, or is outside the range, described in [the Guidelines]," the court must state "the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2). This requirement has two purposes: to "'develop an adequate record so that appellate courts can perform substantive review'" and to "guarantee that sentencing judges continue to consider every convicted person as an individual." *Locke*, 664 F.3d at 357 (quotation marks omitted). Here, the district court gave a detailed explanation for its above-Guidelines sentence, referencing, among other facts, that Warren was a high-level representative with diplomatic immunity, that he took advantage of Person A's religion in sexually abusing her, that Person A's victim impact statement was "overwhelming to read" and that Warren's conduct in resisting arrest showed that he posed a danger to himself and others. *See* A 13-15. Contrary to Warren's assertion, his case is in no way like our *Akhigbe* decision, in which we found that the district court committed plain error in imposing an above-Guidelines sentence when it gave virtually "no individualized reasoning as to why [it] believed a sentence 12 months above the Guidelines range was appropriate for this particular defendant." 642 F.3d at 1086. By contrast, the district court's explanation of its upward variance was extensive and individualized.

Warren next complains that the court's written explanation of the sentence was insufficient. 18 U.S.C. § 3553(c)(2) provides that, in imposing an upward variance, in addition to explaining its reasons for doing so in open court, the court must state its reasons "with specificity in a statement of reasons form issued under [28 U.S.C. § 994(w)(1)(B)]." "Written statements offering only vague generalities that fail to discuss meaningfully the particular defendant and his particular crime do not" satisfy section 3553(c)(2). *Akhigbe*, 642 F.3d at 1087. But here, the statement of reasons form—attached to an annotated partial transcript of Warren's March 3 sentencing—offered more than "vague generalities." First, the form (which was attached to the judgment) explained that the upward variance was based on four factors included in section 3553(a).[1] Second, the transcript, which was incorporated by reference into the statement of reasons form, contained the district court's entire oral explanation of the sentence, including the upward variance, along with the court's annotations. This court has previously approved a written statement of reasons in which the district court incorporated the sentencing transcript by reference. *See United States v. Wilson*, 605 F.3d at 1035 (finding written statement adequate because the district court's written statement of reasons "referenc[ed] its findings at the sentencing hearing").

---

[1] The factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); (2) "the seriousness of the offense, . . . respect for the law, and . . . just punishment for the offense" (18 U.S.C. § 3553(a)(2)(A)); (3) "adequate deterrence to criminal conduct" (18 U.S.C. § 3553(a)(2)(B)); (4) "protect[ing] the public from further crimes of the defendant" (18 U.S.C. § 3553(a)(7)). A 3.

Warren also claims that the district court improperly varied upward based in part on Warren's sexual abuse of Person B despite the court's statement that it "was not in a position to determine what had happened" to Person B. SA, Tab I at 49. Warren misunderstands the record. While the court mentioned Warren's abuse of Person B during sentencing, it did not rely on that incident as a reason for the upward variance. Instead, the court's variance explanation plainly relied on the assault of only one woman, Person A. *See, e.g.*, A 13-14 ("*[t]he victim* here is a married Muslim woman . . . . *[s]he* could not seek legal recourse . . . . by picking a victim such as *this woman* . . . . *she* would not complain . . . . *[h]er* victim impact statement[2]") (emphases added).

Warren's final procedural error argument is that the sentencing court considered only two of the section 3553(a) factors. Appellant Reply Br. 1. Although Warren's briefs are difficult to understand on this point, his argument appears to be that the court erred by failing to explicitly refer to *each* section 3553(a) factor. This argument also fails. "[W]e ordinarily presume a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005); *see also United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005) ("It is true that the district court did not specifically refer to *each* factor listed in § 3553(a). But we have not required courts to do so.") (emphasis in original). Here, Warren "has proffered nothing to rebut that presumption," *Locke*, 664 F.3d at 358. Warren's argument is particularly

---

[2] Only Person A filed a victim impact statement. A 10 ("They could not locate [Person B] to file a victim impact statement.").

wanting because the court gave a nine-page oral explanation of the sentence on the record, after a 44-page colloquy between the parties and the court and after the court had reviewed the parties' sentencing memoranda.

In sum, Warren fails to show any, much less plain, procedural error.

**B.**

Warren also argues that his sentence is substantively invalid. His argument, reviewed for abuse of discretion, *see United States v. Gardellini*, 545 F.3d 1089, 1092 (D.C. Cir. 2008), fails.

Specifically, Warren complains "the most reasonable sentence would have been to provide Mr. Warren with treatment for his PTSD and depression at a facility like Behavioral Health of the Palm Beaches in Florida" after a short term of imprisonment. Appellant Opening Br. (App. Br.) 27 (footnote omitted). In support, Warren cites his mental health and substance abuse diagnoses and his psychiatrist's opinion that the only Bureau of Prisons facility that could adequately treat Warren's diagnoses had a long waiting list, with the result that Warren would have to spend a lengthy period in a traditional Bureau of Prisons facility that could not adequately treat him. Warren also complains generally about his sentence, arguing that the court did not give enough weight to the fact that he led an "otherwise impeccable life, one characterized by devotion and service to his country," App. Br. 3. Warren's mental health and substance abuse problems are, of course, relevant to sentencing. While a PTSD diagnosis may mitigate criminal conduct that occurs spontaneously or unexpectedly—for example, Warren's resisting arrest—his conviction resulted from conduct, especially drugging his victim, that was planned and

deliberate. Granted, 18 U.S.C. § 3553(a)(2) requires the district court to consider "the need for the sentence imposed" and sets forth as one of the considerations thereunder "to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(2)(D). But the district court considered that factor. Because of Warren's diagnoses, the court recommended that he be placed at the Lexington, KY facility recommended by Warren's psychiatrist and then agreed to change the recommendation to a facility in Butner, NC, at the request of Warren's counsel.

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*