# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 20, 2016          Decided July 7, 2017

No. 14-3069

UNITED STATES OF AMERICA,
APPELLEE

v.

CHAD PYLES,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cr-00006-1)

---

*John A. Briley Jr.*, appointed by the court, argued the cause and filed the briefs for appellant.

*Jennifer Loeb*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Elizabeth Trosman* and *Ann K.H. Simon*, Assistant U.S. Attorneys.

Before: WILKINS, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Dissenting opinion filed by *Senior Circuit Judge* WILLIAMS.

WILKINS, *Circuit Judge*: Pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, the District Court must, at the time of sentencing, "state in open court the reasons for its imposition of [a] particular sentence." 18 U.S.C. § 3553(c). This provision mandates that the District Court offer a "reasoned basis" for its decision and "consider[]" all non-frivolous mitigation arguments. *Rita v. United Sates*, 551 U.S. 338, 356 (2007).

Chad Pyles challenges his 132-month sentence on the basis that the District Court did not consider each and every one of his non-frivolous mitigation arguments before imposing judgment.  Specifically, Pyles contends that the District Court failed to consider that: (1) Pyles' criminal conduct stemmed from his history of childhood abuse; and (2) the child pornography Sentencing Guidelines do not adequately consider the individual characteristics of each defendant.  Pyles argues that the District Court failed to respond explicitly to these two arguments on the record, and that such non-response should be construed as non-consideration and, therefore, error under *Rita* and its progeny.

Because Pyles failed to object to the alleged non-consideration at sentencing, though he had every opportunity, we review his claim for plain error.  FED. R. CRIM. P. 52(b). As the Supreme Court held in *Rita*, the District Court is not required to produce "a full opinion in every case," and need not expressly address each and every mitigation argument advanced by the defendant. 551 U.S. at 356. Rather, so long as the judge provides a "reasoned basis for exercising his own legal decisionmaking authority," we will presume that he or she adequately considered all arguments and uphold the sentence if it is otherwise reasonable. *Id.* Pyles' claim that the District Court is required to respond explicitly to every non-frivolous mitigation argument appears nowhere in our

caselaw; indeed the exact same claim was rejected by the Supreme Court in *Rita*. Accordingly, any purported error was not "so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it," *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994) (quoting *United States v. Frady,* 456 U.S. 152, 163 (1982)), and we find that the District Court committed no "obvious," or plain, error in this case. *United States v. Olano*, 507 U.S. 725, 734 (1993).

## I.

The facts of this case mirror the oft-told news story of an undercover detective who uses an online chat room to thwart the sexual abuse of minors. In August and September 2013, Pyles communicated with Timothy Palchak, an undercover Metropolitan Police Detective (the "Detective"), regarding Pyles' sexual interest in minors. During e-mail conversations, Pyles distributed over the Internet five images of child pornography, three of which were sadomasochistic in nature. Later, Pyles and the Detective agreed to meet and have sex with two underage girls. Pyles traveled interstate to Washington, D.C. for this purpose, where he was promptly arrested. A consent search of Pyles' computer revealed four additional videos of child pornography. In light of this evidence, the Government charged Pyles with two counts of criminal conduct: (1) traveling with intent to engage in illicit sexual acts in violation of 18 U.S.C. § 2423(b); and (2) knowingly distributing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]

---

[1] On February 20, 2014, the parties entered into a plea bargain in which Pyles' charge for knowingly distributing child pornography was reduced to one count of possession of child pornography.

After reviewing the case, the District Court ordered Pyles to undergo psychological and psychosexual examination to determine if he was a pedophile and to gauge his propensity for recidivism. The psychologist diagnosed Pyles with pedophilia on a provisional basis, severe substance use disorder, and antisocial personality disorder. In particular, the psychologist explained that Pyles refused to acknowledge he had a problem or needed treatment, and downplayed the severity of his actions. With regard to Pyles' risk of recidivism, the psychologist noted that if Pyles participated in and completed a substance abuse program and a sex offender treatment program, his likelihood of recidivism was low. However, a failure to start or complete either of the programs would result in a moderate to high risk of recidivism.

Following the psychological exam, the District Court convened a sentencing hearing on September 30, 2014. The parties jointly recommended a sentence of 87 months imprisonment. This recommendation, however, was based on a miscalculation during plea negotiations of Pyles' offense level at 28, which corresponds to an incarceration term of 78 to 97 months under the United States Sentencing Guidelines. When the District Court identified the proper offense level, the parties agreed that the revised Guidelines range was 108- to 135-months' imprisonment. Nonetheless, the parties continued to advocate for an 87-month term. In particular, Pyles presented six mitigation arguments, including the two at issue in this case: (1) the Sentencing Guidelines arbitrarily increased the base offense levels and enhancements for child pornography without taking into account individualized conduct; and (2) as a child, Pyles was subjected to adult pornography and was sexually abused by older teenagers.

The District Court, however, was unconvinced that a below-Guidelines sentence should apply. When the parties

recommended 87-months' imprisonment, the District Court noted that this would be a downward variance, which was an "extraordinary request." J.A. 122. Specifically, the judge explained that "the variance downward has to be consistent with the [section] 3553 factors" and, given the facts, he was "hard-pressed to see how that could possibly be the case here." J.A. 115; *see* 18 U.S.C. § 3553(a).

In particular, the judge cautioned that the seriousness of Pyles' behavior should not be taken lightly, especially given Pyles' willingness to use the Internet for pornography and sexual communications, and physically travel to have sexual intercourse with a minor. The judge also referenced the sadomasochistic images and videos contained on Pyles' computer. Further, the judge noted that Pyles' decision to plead guilty was only because he had been caught "red-handed," and the Government offered him a "huge break" by reducing his charge from distribution of pornographic material to possession. The judge also cited the "distressing" nature of the psychiatric report and, in particular, the fact that Pyles refused to acknowledge that he has a problem and needs treatment. The judge concluded that Pyles' refusal to engage in sex offender management programs at the prison increased his risk for recidivism from low to moderate/high.

Moreover, the District Court expressed skepticism towards Pyles' Sentencing Guidelines argument. Pyles claimed that the child pornography guidelines, U.S.S.G. § 2G2.2, arbitrarily increased the base offense levels and enhancements for defendants regardless of their individual characteristics and the severity of each crime. However, contrary to Pyles' contentions, the District Court did not reflexively rely on the Guidelines range, but rather evaluated Pyles' specific conduct and the risk that he posed to the community. Indeed, the Government conceded at the hearing

that this was quite a serious case, and that "[w]hen someone travels, acts on these urges, travels interstate to have sex with the child, . . . there's no reason to vary from the guidelines." J.A. 117. Thus, the Government noted that while there might be a legitimate argument that the child pornography guidelines were too high in some circumstances, the guidelines for the travel count were "too low." J.A. 119. This concession prompted the judge to respond that the Guidelines argument supported, at best, a sentence of 108 months – the bottom of the applicable Guidelines range – but that it was "not an argument" that would support going below the Guidelines range to 87 months. Later, the judge added that the criticisms of the child pornography guidelines were weak in this case where Pyles' offense involved images of prepubescent children, sadomasochistic images, and distribution of images rather than mere possession. Accordingly, the judge imposed a sentence of 132-months imprisonment.

Pyles appealed the District Court's sentence on October 15, 2014. His primary argument on appeal is that the District Court provided no explanation regarding its rejection of his mitigation arguments. Rather, Pyles contends, the District Court improperly focused on the seriousness of the offense and the need for punishment. We have jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

Our review raises two interrelated questions. First, did Pyles sufficiently preserve his claim of error to trigger abuse of discretion review, or is our analysis limited to plain error? Unsurprisingly, Pyles argues that the correct standard is abuse of discretion, Appellant Br. 7-8, while the Government

contends that this Court's review is restricted to plain error, Appellee Br. 18. As explained below, we find that the appropriate standard is plain error. Second, was there plain error? Because we find that Pyles has not shown that it was an obvious error for the District Court to fail to expressly state that all of Pyles' mitigation arguments were appropriately considered but nonetheless rejected, we find no plain error.

## A.

The correct standard of review in this case hinges on whether Pyles timely objected to the District Court's sentencing ruling. Where a sentencing violation has been properly preserved, this Court reviews the sentencing determination for abuse of discretion. *See United States v. Locke*, 664 F.3d 353, 356 (D.C. Cir. 2011). A defendant's failure to timely raise a procedural violation at sentencing results in appellate review for plain error. *United States v. Bigley*, 786 F.3d 11, 13 (D.C. Cir. 2015). Pursuant to the plain error standard, Pyles must demonstrate that the District Court committed an "obvious" or "clear" error that affects his substantial rights. *Olano*, 507 U.S. at 734. An error affects a defendant's substantial rights if it is prejudicial, *United States v. Simpson*, 430 F.3d 1177, 1183 (D.C. Cir. 2005), and seriously impacts "the fairness, integrity, or public reputation of judicial proceedings," *Locke*, 664 F.3d at 357.

In the context of an asserted procedural error for failure to consider a non-frivolous mitigation argument, our precedent requires that the defendant state his objection on the record at sentencing. In *Locke*, this Court held that because the defendant "did not challenge the adequacy of the district court's statement of reasons below, we review her claim for plain error." 664 F.3d at 357. It was not enough for the defendant to simply state her non-frivolous mitigation

argument on the record; rather, when the District Court imposed its sentence and did not reference this argument, the defendant had an affirmative duty to object if she believed that the argument had not been given fair consideration. Because the District Court gave the defendant "ample opportunity to object" when it asked the parties if they "know of any reason other than reasons already stated and argued why the sentence should not be imposed," and defense counsel simply replied "[n]othing else, [y]our Honor," plain error review was appropriate. *Id.* (alterations in original). We have consistently followed that approach. *See United States v. Hunter*, 809 F.3d 677, 683 (D.C. Cir. 2016) ("*Locke* describes the best procedure for district judges to follow—after sentencing the judge should ask if there are any objections to the sentence imposed not already on the record."); *United States v. Mack*, 841 F.3d 514, 518 (D.C. Cir. 2016) (applying plain error review where defendant asserted on appeal that District Court failed to consider his sentencing manipulation argument, but no objection was made even though "the trial judge asked appellant's counsel on two occasions whether there was any reason why the court should not impose the sentence on the terms indicated").

The circumstances of this appeal mirror those of *Locke*, *Hunter*, and *Mack*. After pronouncing the sentence, the District Court asked defense counsel if he had any questions, and counsel requested that the court recommend a prison placement for Pyles. The District Court agreed, and then asked whether there was "anything else," prompting defense counsel to request that the court recommend substance abuse treatment during incarceration. The District Court agreed to recommend that Pyles be evaluated for such treatment and again asked "anything else?" and defense counsel responded "no." J.A. 148-50. Thus, despite three explicit invitations to do so, Pyles did not challenge the adequacy of the District

Court's consideration of his mitigation arguments or the District Court's explanation of its sentence.

Citing *United States v. Tate*, 630 F.3d 194 (D.C. Cir. 2011), our dissenting colleague contends that we are violating precedent and that there is an "intra-circuit conflict" in our cases involving the preservation requirements for alleged procedural error during sentencing. Dissent Op. 4. Not so. *Tate* was a procedural error case, but it was not a "failure to consider" procedural error case. In *Tate*, the defendant faulted the District Court for mistakenly believing that the 2007 amendment to the crack guideline had reduced the crack-to-powder disparity from 100 to 1 to a disparity of around 20 to 1, when, in actuality, the 2007 amendment brought the disparity to 70 to 1 as applied to Tate's offense level. 630 F.3d at 197. The alleged error in *Tate* was that the District Court incorrectly considered the sentencing mitigation argument, not that the court had failed to consider the argument at all. As we have previously explained, "unnoticed errors of the sort characterized by the Supreme Court in *Gall* as procedural 'such as . . . failing to consider the § 3553(a) factors' . . . would normally be reviewed for plain error." *United States v. Russell*, 600 F.3d 631, 633–34 (D.C. Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

The distinction is important. Where either the defense or prosecution believe that the trial court has overlooked an argument in favor of mitigating or enhancing the sentence, we should "induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them," and thereby "correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Puckett v. United States*, 556 U.S. 129, 134 (2009). Requiring a contemporaneous objection to a failure of consideration "is neither pointless nor 'formulaic,'" *Hunter*, 809 F.3d at 683,

because "a clear objection can enable a trial court to correct possible error in short order and without the need for an appeal," *id.* (quoting *United States v. Bennett,* 698 F.3d 194, 199 (4th Cir. 2012)).

Therefore, in accordance with our precedent, because appellant raised no objection to his sentence despite three opportunities to do so, we review the asserted procedural violation in this case for plain error. *Hunter*, 809 F.3d at 683 (using plain error review when appellants raised no objection even though District Court asked them if there were "any additional questions" after imposing sentence).

**B.**

Having discerned the standard of review, we must next determine whether the District Court committed plain error by failing to explain its rejection of each mitigation argument on the record. We find that it did not.

To give rise to plain error, the error must have been "obvious," meaning that "the error is clear under current law." *Olano*, 507 U.S. at 734; *see also Henderson v. United States*, 133 S. Ct. 1121, 1124-25 (2013) ("[A]s long as the error was plain as of . . . the time of appellate review . . . the error is 'plain' within the meaning of the Rule."). Stated differently, "[a]bsent controlling precedent on the issue or some other 'absolutely clear' legal norm, the district court committed no plain error." *United States v. Nwoye*, 663 F.3d 460, 466 (D.C. Cir. 2011) (quoting *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009)).

The holdings of the Supreme Court and this Court state that when presented with non-frivolous arguments for mitigation, the District Court must consider those arguments before imposing the sentence. *Bigley*, 786 F.3d at 12, 14. In

addition to considering any mitigation arguments, the District Court must provide a "reasoned basis" when announcing its sentencing decision. *Locke*, 664 F.3d at 357. These standards, however, do not require the District Court to individually and expressly address every non-frivolous argument advanced by a defendant on the record. *Id.* Rather, "so long as the judge provides a 'reasoned basis for exercising his own legal decisionmaking authority,' we generally presume that he adequately considered the arguments and will uphold the sentence if it is otherwise reasonable." *Id.* at 358 (quoting *Rita*, 551 U.S. at 356). Where the record makes clear that the judge considered and evaluated a defendant's arguments, the presumption of procedural reasonableness will be upheld. *Id.*

In *Locke*, the defendant similarly challenged his sentence on the basis that the District Court failed to consider two mitigation arguments. *Id.* at 354. The record in *Locke*, however, clearly evidenced an extended colloquy between the District Court and Locke's counsel regarding the defendant's refusal to cooperate with the Government. *Id.* at 358. Following this discussion, the District Court offered a well-reasoned basis for its decision. In particular, "[a]fter outlining the seriousness of the offense, the length of the conspiracy, the 'significant role' played by Locke and [the District Court's] doubts about her remorse, [the judge] concluded that a 'substantial period of incarceration' was warranted." *Id.* This Court found no plain error even though the judge did not address every mitigation argument offered by the defendant.

The holding of *Locke* flowed from the guidance of *Rita*, where the Supreme Court refused to require district court judges to write full opinions for every sentencing decision. 551 U.S. at 356. The Supreme Court stated that the length and detail of a judge's sentencing explanation, along with his decision to respond to or ignore certain arguments should be

left "to the judge's own professional judgment." *Id.* A sentencing judge need only set forth enough facts and analysis "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* If a judge is merely applying the Sentencing Guidelines to a particular case, his actions do not require a lengthy explanation. *Id.* Therefore, where a judge listens to arguments for mitigation, considers the supporting evidence, and finds that the circumstances do not warrant a below-Guidelines sentence, then "context and the record make clear" that the judge considered each argument. *Id.* at 358-59. Citing *Rita* and *Locke*, we recently explained that while non-frivolous mitigation arguments must always be considered, we "do not require the court to expressly address every argument advanced by a defendant" when imposing a sentence. *United States v. Borda*, 848 F.3d 1044, 1071 (D.C. Cir. 2017), *petition for cert. filed*, No. 16-1396 (May 23, 2017).

The fact that we are reviewing a within-Guidelines sentence also impacts the analysis. In *United States v. Brinson-Scott*, we cited *Rita* for the proposition that "[w]here, as here, the district judge pronounces a within-Guidelines sentence . . . little explanation is required." 714 F.3d 616, 625 (D.C. Cir. 2013); *see also Rita*, 551 U.S. at 356 ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."). Comparably, in *United States v. Akhigbe*, we noted that, "[i]n many cases, such as where the parties have presented only 'straightforward, conceptually simple arguments' and the district court concludes a Guidelines sentence is appropriate, a fairly brief recitation of reasons will satisfy the court's procedural obligations." 642 F.3d 1078, 1087 (D.C. Cir. 2011) (quoting *Rita*, 551 U.S. at 356). Other circuits have construed *Rita* similarly, noting that "[l]ess

explanation is typically needed when a district court sentences within an advisory guidelines range." *United States v. Harris*, 567 F.3d 846, 854 (7th Cir. 2009).

The dissent contends that *Rita* requires that the District Court must not only "consider" all non-frivolous mitigation arguments, but also "acknowledge" or "respond" to every non-frivolous argument on the record. Dissent Op. at 10-11. But this supposed requirement for an explicit response appears nowhere in the Supreme Court's opinion, even though the Petitioner in *Rita* argued that "district courts must articulate their consideration of all factors relevant to judgment," and that it was error to "impos[e] sentence without articulating, on the record, its consideration of the factors enumerated in 18 U.S.C. § 3553(a), as plainly required by [18 U.S.C.] § 3553(c)." Brief for Pet'r at 5, 42-43, *Rita v. United States*, 551 U.S. 338 (2007) (No. 06-5754). The Supreme Court declined the Petitioner's invitation to go this far, and instead required only that the district courts consider all non-frivolous mitigation arguments and articulate merely a "reasoned basis" for the sentence. *Rita,* 551 U.S. at 356.

The dissent ignores the holding as pronounced in *Rita*, and further ignores the fact that the Supreme Court refused Petitioner's demand that the district court "articulate" all factors considered. Instead, the dissent reads between the lines to assert that when the Supreme Court used the word "consider," it really meant "acknowledge and consider." But as explained above, we have not described *Rita* as requiring such an express acknowledgement in every single case, and notwithstanding the dissent's efforts to manufacture a circuit split, neither have our sister circuits. Indeed, the First Circuit has held that where mitigating arguments were "thoroughly discussed in the presentence report; that the district court did not explicitly mention them during the sentencing hearing

suggests they were unconvincing, not ignored." *United States v. Lozada-Aponte*, 689 F.3d 791, 793 (1st Cir. 2012). Thus, to the extent that out-of-circuit cases are even relevant in the plain error context, they fail to establish a "clear" and "obvious" uniform rule that district judges must always acknowledge every non-frivolous mitigation argument during sentencing. *See, e.g.*, *id.* ("Though we require consideration of the § 3553(a) factors, we do not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned."); *United States v. Chiolo*, 643 F.3d 177, 182 (6th Cir. 2011) ("Chiolo claims that his sentence was procedurally unreasonable because the district court did not address several of his non-frivolous arguments . . . . While it is true that the court did not expressly address these arguments, Chiolo demands a degree of formalism which the law does not require."); *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010) ("Even if the judge did not adequately address these arguments, we regularly affirm sentences where the district judge does not explicitly mention each mitigation argument raised by the defendant."); *United States v. Gasaway*, 684 F.3d 804, 807 (8th Cir. 2012) ("Gasaway is correct that the district court did not . . . directly address Gasaway's difficult life or alcohol problems. However, the court stated it had considered all of the sentencing factors, and it is clear from the record that the court was on notice of Gasaway's mitigating life circumstances. In sentencing a defendant, 'it is often enough that a judge only reference some of the factors.'") (quoting *United States v. McGlothen*, 556 F.3d 698, 702 (8th Cir. 2009)); *United States v. Perez-Perez*, 512 F.3d 514, 516 (9th Cir. 2008) ("[T]he sentencing judge expressly based the within-guidelines sentence on the defendant's extensive criminal history and the need for deterrence, while apparently considering—without explicit reference—Perez-Perez's mitigation arguments. That the defense's arguments were

considered is clear from the transcript of the sentencing proceeding, during which the district court actively questioned and engaged the defense. This is sufficient under the Supreme Court's decision in *Rita* and this Court's earlier authority."); *United States v. Amedeo,* 487 F.3d 823, 833 (11th Cir. 2007) ("[A]lthough the district court's sentencing order made no mention of evidence that arguably mitigated in Amedeo's favor under § 3553(a), we cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining Amedeo's sentence.").

Thus, the precedent regarding mitigation arguments follows the precedent relating to the § 3553(a) factors – the District Court must consider the argument, but that does not equate to a mandate that such consideration must be spelled out on the record. *See Simpson*, 430 F.3d at 1186 ("It is true that the district court did not specifically refer to *each* factor listed in § 3553(a). But we have not required courts to do so."); *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (rejecting the argument "that the court erred by failing to explicitly refer to *each* section 3553(a) factor"). "As this Court has said many times, there is no requirement that sentencing courts expressly list or discuss every Section 3553(a) factor at the sentencing hearing." *United States v. Knight*, 824 F.3d 1105, 1110 (D.C. Cir. 2016). Indeed, we have upheld a sentence even where "the district court's explanation did not invoke *any of the section 3553(a) factors by name*. But we do not require that it do so. Sentencing, after all, is not a game of Simon Says." *Brinson-Scott*, 714 F.3d at 626 (emphasis added). The same is true for mitigation arguments, and the dissent is mistaken to contend otherwise.

Applying these principles to the present appeal, we cannot say that the District Court plainly erred by not

explicitly addressing each of Pyles' mitigation arguments. A trial judge may hear, understand, and weigh a defendant's non-frivolous argument even though the judge does not fully and explicitly address that precise argument on the record. Context matters. If a trial judge states a reasonable decision in support of sentencing and that decision obviously forecloses an objection raised by the defendant, we need to be very cautious before concluding that the judge has failed to give due consideration to the non-frivolous objection. The dissent's categorical rejection of implicit consideration is misguided. In *Gall*, the Supreme Court rejected the contention that the district court failed to consider the need to avoid unwarranted sentencing disparities, where the district judge did not explicitly weigh this factor when he imposed a probationary sentence even though the Guidelines range was 30-37 months imprisonment. 552 U.S. at 52-56. The Court found that the factor was implicitly considered because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Id.* at 54.

In this case, several factors from the record and surrounding context – in addition to the detailed explanation for the sentence described above – make it clear that the judge considered and implicitly rejected Pyles' contentions before rendering a within-Guidelines sentence based on the judge's reasoned decisionmaking. The precedent of the Supreme Court and our Court requires nothing more.

First, the judge explicitly stated on the record that he spent a "considerable amount of time" reviewing the materials in this case, including Pyles' sentencing

memorandum. Indeed, based upon this review, the judge felt that an important piece of information was missing, and ordered Pyles to undergo a psychiatric evaluation. The judge then convened a hearing on September 9, 2014, to review the results of the evaluation, and allowed the parties to submit supplemental briefing. The judge further delayed the sentencing hearing to get his glasses repaired so he could read everything. During the hearing, the judge referred to the written materials several times, and even read portions of the psychological report to the prosecutor and defense counsel to get their responses. Given this record, it would be entirely unfair to conclude that the District Court did not read and consider the contentions made in the written submissions, including the various arguments in favor of mitigation. *See United States v. Carty*, 520 F.3d 985, 995-96 (9th Cir. 2008) (en banc) (rejecting the argument that "because the district court did not affirmatively state that it considered the § 3553(a) factors, we should assume that it did not," since "the judge stated that he reviewed the papers; the papers discussed the applicability of § 3553(a) factors; therefore, we take it that the judge considered the relevant factors").

Second, the district judge interacted frequently with the prosecutor, defense counsel, and Pyles during each of their allocutions, which demonstrates that he was listening to what they were saying. The dissent suggests that we should conclude that the judge did not consider Pyles' argument for a variance because he expressed skepticism during the prosecutor's allocution and before hearing from the defense, but there is no valid reason to presume that a judge who expresses a tentative view of the sentence refused to consider all arguments made thereafter. It has long been established that "[a] judge . . . may make a preliminary determination about the sentence in his own mind before hearing the defendant's allocution." *United States v. Mata-Grullon,* 887

F.2d 23, 25 (1st Cir. 1989) (per curiam); *see also United States v. Margiotti,* 85 F.3d 100, 103 (2d Cir. 1996); *United States v. Wolfe,* 71 F.3d 611, 614-15 (6th Cir. 1995); *United States v. Laverne,* 963 F.2d 235, 237 (9th Cir. 1992). Such a presumption of non-consideration would be entirely unfair here, where the district judge acknowledged when stating his tentative views that defense counsel had not yet made his argument and he did not want to "steal [counsel's] thunder." J.A. 119. Furthermore, we have never held that a District Court's response to a non-frivolous mitigation argument must be raised solely with defense counsel. If the Government and defendant present similar arguments for mitigation, the District Court's response to either party will be sufficient to show it *considered* the argument. The fact that the District Court addressed this argument with the Government's lawyer does not expunge the consideration of the issue.

Third, the district judge explicitly sought to hear Pyles' mitigation arguments, as he asked defense counsel to "give me your best argument for [a] downward variance" at the beginning of his presentation. J.A. 122. The District Court allowed defense counsel and Mr. Pyles to make lengthy statements; indeed, the sentencing hearing lasted nearly an hour, longer than most of our oral arguments. Unlike the dissent, we are unwilling to find that the district judge failed to consider the precise arguments that he listened to for a very long time and expressly asked to hear.

Fourth, context makes clear why the District Court rejected Pyles' Sentencing Guidelines argument. Given that both Pyles and the Government raised issues with the Sentencing Guidelines in their memoranda, the District Court found it pertinent to discuss this concern at the beginning of the hearing. The Government acknowledged that "[t]he conduct in this case is very, very serious," and explained that

"you have child pornography on one side, where there's all kind of argument on one side what the guidelines should be. But you have travel on the other side, where there, frankly, is no argument." J.A. 117. The District Court responded by explaining that Pyles had already received a huge break in how he was charged because simple possession of pornographic material does not carry a mandatory minimum sentence. After further discussion, the Government noted that "[s]ometimes the Guidelines are possibly much higher than the conduct or much more serious than the conduct, and sometimes they're lower. Frankly, in the case of a travel only . . . it's too low. Sometimes when it's involving child pornography only, it's too high." J.A. 119. The judge explained that this argument could not result in a downward variance in this case. Later, the District Court responded to defense counsel's arguments about the relative seriousness of the travel count versus the child pornography count and their respective Guidelines levels, stating that the Guidelines enhancement for sadomasochistic images was appropriate and rejecting the argument that the child pornography Guideline range should be less than the Guideline range for the travel count. Finally, after hearing from both defense counsel and Pyles, the judge stated "obscene materials are not all the same, some are worse than others, and that's why we have points in this patchwork quilt of calculations that the guidelines engage in," and announced his conclusion that a sentence at the upper range of the Guidelines was warranted because the images in this case involved prepubescent children, sadomasochistic images, and were not just possessed, but also distributed, by Pyles. J.A. 142-43. Thus, it is quite evident that the District Court read, listened to, and considered the mitigation arguments based upon the alleged excessive enhancements of the child pornography Guidelines.

Fifth, with regard to the District Court's alleged failure to consider Pyles' history of sexual abuse, we note that Pyles' childhood sexual abuse was discussed in the presentence report, Pyles' sentencing memorandum, and the psychological evaluation, all of which the District Court read. Indeed, it was only *after* reviewing the presentence report and sentencing memoranda that the District Court, on its own volition, ordered Pyles to undergo psychological testing. The District Court then permitted additional briefing by the parties to address the findings in the psychological report. It would be puzzling to hold that the District Court did not consider the history of sexual abuse described in a report that the judge specifically requested. Rather, it is both fair and reasonable to presume that a judge read and considered information that he specifically sought out. The opposite presumption, embraced by the dissent, seems much more dubious.

The District Court's discussion of Pyles' drug abuse is also relevant on this point. Pyles blamed his pedophilia on his drug usage and, in turn, he blamed his drug usage on his sexual abuse as a child. Thus, Pyles' drug use was inextricably intertwined with his history of sexual abuse. The District Court directly acknowledged Pyles' drug usage on the record, so it is hard to conceive how the District Court could have considered the drug abuse without also considering the mitigating factor that supposedly begat the drug abuse. While an explicit response to the sexual abuse argument would have been advisable, the context shows that the argument was considered.

Sixth, in addition to what was said during the formal pronouncement of sentence, the District Court made several statements throughout the sentencing hearing that explained its reasoning. The District Court took issue with Pyles' minimization of his crimes, the severity of the conduct,

including interstate travel and possession of sadomasochistic images, and Pyles' unwillingness to participate in sex offender treatment. Specifically, the judge explained that Pyles' risk of recidivism increased to moderate/high because of his refusal to undergo treatment, and that Pyles simply blamed drug usage for his pedophilia. The District Court also stressed its obligation to punish and deter Pyles and others from committing this crime in the future, along with the need to protect the community. The judge's decision was further based on the fact that Pyles already received a "huge break" because he pled guilty to simple possession of pornography, not distribution, and that his acceptance of guilt was only because he had been caught "red-handed" and had no legitimate defense. The District Court's explanation of these factors at the sentencing hearing provides a well-reasoned basis for rejecting the arguments for a downward variance. The judge's reasoning suggests that he considered all appropriate circumstances and imposed a sentence that would achieve the goals of individual and general deterrence, adequate punishment, and protection of the community.

In summary, our precedent requires the District Court to *consider* each and every non-frivolous argument for mitigation, but does not require the judge to *address expressly* each argument on the record when pronouncing the sentence. Our review, particularly in the plain error context, is for "significant procedural error," *Gall*, 552 U.S. at 51, rather than for fastidious compliance with protocol. Express acknowledgment of mitigation arguments is of course helpful and encouraged, but it is not required in every instance. The record and context of this case make clear that the judge did not violate any of the settled standards set forth in *Rita* and *Locke* when he imposed a within-Guidelines sentence, and there is enough in the record to allow for meaningful

appellate review. Accordingly, we find no plain error. The judgment is affirmed.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, dissenting: My colleagues recognize that a sentencing court "must consider" any "non-frivolous arguments for mitigation" that a defendant presents. Maj. Op. at 10 (citing *United States v. Bigley*, 786 F.3d 11, 12, 14 (D.C. Cir. 2015)). But confronted with a record that fails to show such consideration, the majority is content with evidence that the judge spoke reasonably about the issues he *did* address. This accommodating test effectively eliminates the requirement of considering nonfrivolous arguments. Because the record offers no hint that the district court even listened to—let alone considered—two important arguments before it, I respectfully dissent.

The record shows the district court batting down several arguments for leniency, but these were *government* arguments, not Pyles's. The prosecutor urged the district court to sentence *below* the bottom of the corrected Guidelines range (108-135 months). Sentencing Tr. at 4-5. (The plea agreement had stated a range of 78-97 months, having assumed the wrong criminal history category and left out a distribution enhancement.) The government joined Pyles in suggesting an intermediate range of 87-108 months, based on correcting the criminal history category but not applying the enhancement. See *id*. at 3-5, 15; Gov't Sentencing Mem. at 2-3 ("Gov't Mem."). Both sides requested a sentence at the very bottom of the intermediate range—87 months. See Sentencing Tr. at 4-5, 15; see also Gov't Mem. at 2-3. Citing his own experience from having "handled these cases [] exclusively for a number of years," the prosecutor enumerated reasons for leniency: the mistake in the agreement; "the relatively small amount of child pornography;" and the immediate cooperation on Pyles's part. Sentencing Tr. at 4-6, 8. Given these mitigating circumstances, the prosecutor urged that the intermediate range of 87-108 was "where the guidelines are most appropriate." *Id*. at 9.

The district court countered the prosecutor's points. *Id*. at 4-10. We may assume that its dispatch of them was adequate. But that tells us nothing about the two separate arguments for a variance raised by Pyles's counsel. As to these, the court uttered not the slightest acknowledgement. First, Pyles had been sexually abused and exposed to pornography as a child; counsel presented these events as a key source of his mental health problems, drug addiction, and criminal behavior, culminating in the current charges. See *id*. at 20-21; Defendant's Sentencing Mem. at 14 ("Defendant's Mem."). Second, as the Sentencing Commission had acknowledged, the child pornography Guidelines are rife with enhancements for circumstances that almost invariably accompany a child pornography conviction, including Pyles's (e.g., use of a computer, sadomasochistic images), thereby inflating the range and eliding meaningful distinctions of culpability. See Sentencing Tr. at 13-15, 19-20, 25; see also U.S. Sentencing Commission, *Federal Child Pornography Offenses* iii & n.14 (2012) ("*Commission Report*"); *id*. at 313 ("[E]nhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.").

Whenever defense counsel raised these contentions the district court moved on without discussing them or even signaling recognition; counsel would circle back to his variance request, but never succeeded in engaging the court's focus. Before counsel had even finished his opening argument about the Guidelines' inadequacies, see Sentencing Tr. at 13-15, the court interrupted, "Hold on," and launched into discussions of the relative seriousness of Pyles's two charges, of public safety, and of why probation (which no party had requested) was inappropriate, *id.* at 15-18. Counsel attempted to reorient the discussion, explaining how even the Sentencing Commission was "in doubt" over U.S.S.G. § 2G2.2 and how Pyles deserved a variance based on the traumatic abuse he had suffered. *Id*. at

19-21. Counsel then turned to the skepticism about Pyles's possible rehabilitation that the court had expressed in colloquy with the government; he urged that with therapy, Pyles could "succe[ed]." *Id.* at 21-22. Instead of responding directly to Pyles's two main arguments, the court launched into a denial of the possibility of therapy—there was, said the court, "no basis . . . to believe that [Pyles] would engage in" sex offender treatment, *id.* at 22—a denial that was, as we'll soon see, a radical oversimplification of the record. Counsel responded to the court's concern and then returned to the variance request, which he bolstered with the Sentencing Commission's own statements and relevant Supreme Court precedents. *Id.* at 23-26. Signaling that it thought counsel had been talking for long enough, the court asked Pyles if he wished to speak. *Id.* at 26. The court ultimately sentenced Pyles to 132 months (eleven years), three months short of the corrected Guidelines maximum.

The record, including the district court's oblique and in part mistaken comments, reflects no consideration of either of counsel's "'nonfrivolous reasons' . . . for an alternative sentence"—consideration required by our and the Supreme Court's cases. See *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007)). Until now, we have enforced this procedural requirement without hesitation. See *Bigley*, 786 F.3d at 14 (reversing below-Guidelines sentence for failure to consider nonfrivolous argument); see also *United States v. McKeever*, 824 F.3d 1113, 1125-26 (D.C. Cir. 2016) (remanding within-Guidelines sentence for failure to consider nonfrivolous argument). In dispensing with this requirement, or at best skating over its violation, the panel breaks from precedent.

Our disagreement begins with the standard of review. Pyles's counsel raised his requests for leniency multiple times despite the court's apparent unwillingness to hear them. But

because counsel never objected that his repeated arguments had gone unheeded, my colleagues believe the error must be viewed through the plain error lens rather than abuse of discretion. Their decision embraces one side of an intra-circuit conflict while obscuring the other. They rely on *Locke*, where we said an objection was required to preserve a claim that nonfrivolous arguments went unconsidered. 664 F.3d at 356-57; accord *United States v. Mack*, 841 F.3d 514, 525 (D.C. Cir. 2016). But we had earlier held in indistinguishable circumstances that a defendant need only "inform the [district] court . . . of the ruling he wants the district court to make and the ground for so doing." *United States v. Tate*, 630 F.3d 194, 197 (D.C. Cir. 2011) (quoting *United States v. Rashad*, 396 F.3d 398, 401 (D.C. Cir. 2005)); see also *id*. at 198 ("Having stated the facts and the law regarding the [sentencing argument] and having requested that the district court exercise its discretion . . . , counsel preserved Tate's . . . claims of error and counsel was not obligated to object . . . ."). Judges in the Third Circuit have rightly described our precedents on this issue as "internally inconsistent." *United States v. Flores-Mejia*, 759 F.3d 253, 260 n.1 (3d Cir. 2014) (en banc) (Greenaway, Smith, Shwartz & Sloviter, JJ., dissenting).

My colleagues distinguish *Tate* with the observation that one of the claimed procedural errors involved a misstatement rather than an omission. Maj. Op. at 9. This fails twice. First, my colleagues offer no reason to find the difference meaningful for this issue. Second, *Tate* applied its no-need-to-object rule to another claimed error almost identical to the one in dispute here: that the sentencing judge "fail[ed] to appreciate" an argument to vary downward based on policy disagreement with the Guidelines. *Tate*, 630 F.3d at 199-200. The government asserted the necessity of a post-sentence objection, but we flatly rejected the idea. *Id*. at 197-98. We applied abuse of discretion review and affirmed the sentence because the judge had in fact

acknowledged the policy problems in the Guidelines and "recognized that it had discretion to vary." *Id*. at 200.

Further, as applied in these circumstances, where counsel has repeatedly had his points brushed off, he might well feel that he'd look like an idiot, or be seen as trying to make the court look like an idiot, if he larded the record with the obvious point that he wished his arguments to be evaluated. See *United States v. Lynn*, 592 F.3d 572, 578-79 & n.3 (4th Cir. 2010) (reasoning that it would be a "drain on district-court time" to require post-sentence procedural objections and that "[b]y drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently . . . preserves its claim"); see also *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006) ("The question of whether a district court" adequately explained its sentence "is reviewed *de novo*, even if the defendant did not object below").

But of my disagreements with the majority, this one is the least consequential for Pyles: I would find error under even the more demanding standard; they, apparently, would find none even under the more lenient. Compare Maj. Op. at 21.

To establish plain error, a defendant must show (besides, of course, error): that the error was plain, which in its role as one of the "plain error" requirements "simply means clear," *United States v. Terrell*, 696 F.3d 1257, 1260 (D.C. Cir. 2012) (internal quotation marks omitted); that it "affect[ed] substantial rights," *Mack*, 841 F.3d at 522; and that it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," *id*.

An error is clear "if it contradicts circuit or Supreme Court precedent," *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009), as of "the time of appellate review," *United States v. Bostick*, 791 F.3d 127, 149 (D.C. Cir. 2015) (citing *Henderson*

*v. United States*, 133 S. Ct. 1121, 1129 (2013)). And the majority recognizes that it has been clear since shortly after *United States v. Booker*, 543 U.S. 220 (2005), that a district court "must consider" any "nonfrivolous argument for a sentence below the relevant guideline range." *Bigley*, 786 F.3d at 14; see also *Rita*, 551 U.S. at 356-357; *Locke*, 664 F.3d at 357. Straddling both the "error" and the "clear" elements, the panel finds no "obvious" error. Maj. Op. at 7, 10.

In fact Pyles's two reasons for variance were more than compelling enough to qualify for the modest protections identified in *Rita*, *Locke*, and *Bigley*—a point I do not take my colleagues to dispute. Each argument was appropriately rooted in the sentencing factors of 18 U.S.C. § 3553(a), each was relevant to Pyles's circumstances, and neither was addressed by the district court.

Counsel properly couched his client's sexual abuse within the first § 3553(a) factor, which directs attention to "the history and characteristics of the defendant." See Defendant's Mem. at 14-15; see also Sentencing Tr. at 20. The relevance of childhood sexual abuse in child pornography sentencing is obvious. Such an experience seems sure to produce at a minimum deep moral confusion. Afraid, unable or unsure of how to resist, the child is put in a hopeless bind. His sense of self-worth and agency, his ability to hew to moral norms, are all eroded. See Kimberly A. Tyler, *Social and Emotional Outcomes of Childhood Sexual Abuse: A Review of Recent Research*, 7 AGGRESSION & VIOLENT BEHAVIOR 567, 568-78 (2002) (summarizing research on behavioral sequelae in child sex abuse victims, finding increased suicide, substance abuse, gang involvement, PTSD, and other behavioral problems); see also Abdulaziz Al Odhayani et al., *Behavioural Consequences of Child Abuse*, 59 CANADIAN FAMILY PHYSICIAN 831, 831 (Aug. 2013) (similar); Am. College of Obstetricians &

Gynecologists, *Adult Manifestations of Childhood Sexual Abuse*, Committee Op. No. 498, at 1-2 (Aug. 2011) (similar).

The Sentencing Commission reports that childhood sufferings of sexual abuse are rare among child pornography defendants. "The vast majority of non-production offenders," i.e., ones not producing child pornography, "reported [no] . . . history of childhood sexual abuse." *Commission Report* at 164. Perhaps because the combination is relatively rare, § 2G2.2 takes no explicit account of this characteristic, thus making its consideration as part of § 3553(a) all the more important. And because the Supreme Court has eliminated any requirement that mitigating circumstances be "extraordinary," *Gall v. United States*, 552 U.S. 38, 47 (2007), childhood abuse may justify a below-range sentence even if not "exceptional," *United States v. Simpson*, 346 F. App'x 10, 15 (6th Cir. 2009). Although the weight to be given to such personal history is up to the district court (subject to reasonableness review), it plainly represents a nonfrivolous mitigation argument calling for consideration. Without some sign of consideration, there would be no basis for thinking—other than blind faith—that the court really weighed the issues at stake.

Also calling for the district court's consideration was Pyles's other argument—that "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use," § 2G2.2 "no longer adequately distinguishes among offenders based on their degrees of culpability." Defendant's Mem. at 8 (quoting *Commission Report* at ii). Pyles's counsel pointed out that "many of the[] enhancements" to Pyles's sentencing range under § 2G2.2 "recur in each and every" case, thereby "fail[ing] to distinguish as to more culpable, more dangerous offenders." Sentencing Tr. at 14; see also Defendant's Mem. at 12-13 (indicating that the enhancements lead to sentences "greater than necessary," contrary to § 3553(a) (quoting § 3553(a))). He argued in

particular, see Defendant's Mem. at 8-9, that almost all child pornography defendants receive the enhancements Pyles had received for "use of a computer," § 2G2.2(b)(6); for "material involv[ing] a prepubescent minor," § 2G2.2(b)(2); for material "portray[ing] [] sadistic or masochistic conduct," § 2G2.2(b)(4); and for volume of images, § 2G2.2(b)(7)—each of Pyles's four videos counted as 75 images, see § 2G2.2 cmt. 6(B)(ii). These enhancements collectively increased Pyles's range by 12 levels. See Defendant's Mem. at 4. This panoply of enhancements applies so frequently that it serves to conflate offenders rather than differentiate among them. See, e.g., *United States v. Dorvee*, 616 F.3d 174, 184-87 (2d Cir. 2010).

Pyles's critique of § 2G2.2 overwhelmingly overlaps with the Sentencing Commission's own misgivings. See Defendant's Mem. at 8 (citing *Commission Report* at iii, xi, 209, 323). In the Commission's judgment, the enhancements "relating to computer usage and the type and volume of images . . . now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *Commission Report* at iii & n.14. The Commission has warned that these enhancements are "outdated and disproportionate," *id*. at xxi, 321, 331, and has recommended amending them, *id*. at xviii-xxi. See Defendant's Mem. at 8-11 (citing *Commission Report* throughout). As we said of a similar request for departure from the crack cocaine Guidelines, "[I]t remains of great importance that, in its recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline . . . ." *United States v. Pickett*, 475 F.3d 1347, 1355 (D.C. Cir. 2007). Indeed in *Pickett* we reversed the district court for failing to consider how the Commission's own thinking supported a departure request. See *id*. at 1356.

The requirement of "consideration," clearly applicable to both Pyles's points, is unlike other sentencing procedures, such as calculating the range, in that it is a wholly internal process.

With no way of knowing a district court's synaptic firings, the law necessarily looks for external manifestations. "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments *and* has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356 (emphasis added). Ordinarily, "[d]oing so will not necessarily require lengthy explanation," but when a litigant argues, as Pyles has, "that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way," the judge must "say [] more." *Id*. at 356-57. *Rita*'s phrasing makes clear that consideration of nonfrivolous claims and reasoned decision making are independent though interlocking requirements.

Even for a court confronting "straightforward, conceptually simple arguments" as in *Rita* itself, *id*. at 356, the Court gave no license to disregard defense contentions. Instead it emphasized that the judge had "asked questions about each factor" Rita had given to support a variance and "summarized" those arguments on the record. *Id*. at 344-45. The Court used these responses to infer that the judge had "listened to each argument" and "considered the supporting evidence." *Id*. at 358. Although the Court might have accepted just the summarizing or just the questions as adequate, *Rita* made clear that the record must show that the district court heard and understood the nonfrivolous argument. Without that minimum, there is nothing from which to infer genuine consideration.

The Court reiterated this stance in dictum in *Gall*, when it rejected the government's argument that a lenient drug sentence was procedurally infirm: "It is true that the District Judge did not make specific references to the (unquestionably significant) health risks posed by ecstasy, but the prosecutor did not raise [those risks] at the sentencing hearing. Had the prosecutor raised the issue, specific discussion of the point

might have been in order." 552 U.S. at 53-54. Compare Maj. Op. at 16 (discussing unrelated point in *Gall*, 552 U.S. at 54, that a reviewing court can discern trial court consideration of a § 3553(a) factor—avoidance of unwarranted disparities—from a combination of the factor's automatic inclusion in the calculation of the guideline and the trial court's extended inquiry regarding the sentences given to the co-defendants in the case).

Starting with *Locke*, our cases have spoken of *Rita*'s inference in terms of a presumption. 664 F.3d at 358. But the substance of our requirement has been the same (until today). Just as *Rita* relied on the district court's questioning and summarizing the defendant's claims, we have asked if the district court has at least *acknowledged* the defendant's nonfrivolous arguments on the record. See *Bigley*, 786 F.3d at 173 (sentencing law calls for district court to "respond[] to a defendant's arguments"); see also *Mack*, 841 F.3d at 523. In *Locke* "the record ma[de] plain" this acknowledgment: of the two "arguments Locke claims it ignored," the district court "engaged in an extended colloquy" on one and "explicitly acknowledged" the other. 664 F.3d at 358. With that bar met, then "so long as the judge provides a 'reasoned basis for'" the sentence, "we generally presume that he *adequately* considered the arguments." *Id*. (emphasis added) (quoting *Rita*, 551 U.S. at 356). Thus *Locke*'s presumption of adequate consideration flowed from the quite specific acknowledgement of defendant's claim; we didn't create something from nothing, reasoned consideration from silence. What if the judge offers a "reasoned basis" for the sentence but fails to acknowledge the defendant's argument? We reverse, as in *Bigley*. The principle seems straightforward: if "the sentencing judge *fails to respond* to a nonfrivolous argument, the presumption of adequate consideration is rebutted." *Mack*, 841 F.3d at 523 (emphasis added).

My colleagues recoil from the words "respond" and "acknowledge" in *Mack*, *Bigley*, and *Locke*. Possibly they fear that "respond" could be taken to mean a compelling refutation of the defendant's claims (a reading unsupported by our cases). But I cannot fathom the majority's objection to "acknowledge," a term that, if anything, *understates* the law's demand. In *McKeever* we recognized that passing or obscure references cannot sustain an inference of consideration. There, a defendant had "clearly raised sentencing entrapment" as a reason for leniency. 824 F.3d at 1125. And, as we said, the judge's statements showed that she "had an inkling of the issue" and "was aware that police [not defendant] had brought the firearms." *Id*. at 1117, 1126. But, because the court's comments did not "expressly address[] the issue," we could not discern whether the court "meant to reject" the argument or had simply "failed to address" it. *Id*. at 1125-26. Holding that the district court fell short of the requirements for *Locke*'s presumption, we vacated and remanded the sentence. *Id*.

Thus we require actual acknowledgment: Delphic comments won't suffice. But contrary to my colleagues' protestations, this bar can be met without the court's explicitly weighing the nonfrivolous argument. We recently took a sentencing court's barebones acknowledgment, "[Y]ou all have strived to do the right thing during your period of incarceration," and inferred from it a consideration of the strengths and weaknesses of the defendant's rehabilitation claim. *Hunter v. United States*, 809 F.3d 677, 685 (D.C. Cir. 2016). And in *United States v. Fry*, where a defendant raised an argument similar to Pyles's about the unreasonable enhancements in the child pornography guidelines, the district court's response was skeletal but direct. 851 F.3d 1329, 1332-33 (D.C. Cir. 2017). It said that it would have found the conduct just as grave "even absent those enhancements," and we took that as adequate to "confirm[]" that the court had considered the argument. *Id*. The district courts in *Hunter* and

*Fry* did not say much about the nonfrivolous arguments, but we inferred that there was substance behind their words.

With those cases on one side and *McKeever* on the other, it is obvious where Pyles's sentencing falls.  The district court in *McKeever* manifested an "inkling" of the defendant's argument, yet we remanded: the court here showed none.  See 824 F.3d at 1117, 1126.  Did the district court impose a Guidelines sentence because it disagreed with Pyles on the law, on the facts, on the weighing of the § 3553(a) factors?  These questions cannot be answered from the record; as *McKeever* said, that deficiency has been a "clear" error in our circuit at least since *Locke.  Id*. at 1126.

Even setting aside those clear precedents, the district court's lack of acknowledgment is "plainly out of sync" with the basic requirements of sentencing, as evidenced by the holdings of our fellow circuits.  See *United States v. Burroughs*, 613 F.3d 233, 245 (D.C. Cir. 2010).  These courts, from which the panel now splits, are all but unanimous in requiring direct evidence of consideration.  See, e.g., *Flores-Mejia*, 759 F.3d at 259 (sentencing court abused its discretion by replying to variance argument with only, "OK, thanks. Anything else?"); *United States v. Temprano*, 581 F. App'x 803, 806-07 (11th Cir. 2014) (vacating sentence where judge "fail[ed] to give any explanation for his chosen sentences" and "gave no reason for rejecting Temperano's request for a below-Guidelines sentence and the government's 24-month sentence recommendation"); *United States v. Emmett*, 749 F.3d 817, 822 (9th Cir. 2014) (noting that "district courts must provide an '*explanation*,' not merely *consideration*'" and vacating denial of request to terminate supervised release (quoting *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013)); *United States v. Corsey*, 723 F.3d 366, 377 (2d Cir. 2013) (relying on *Rita* to vacate sentence where, among other faults, the district "court never resolved appellants' significant arguments" for a lower

sentence even though it offered reasons for its decision); *United States v. Wallace*, 597 F.3d 794, 804-05 (6th Cir. 2010) (citing *Rita* and holding that "failure to even acknowledge Defendant's argument" is sentencing plain error); *Lynn*, 592 F.3d at 585 ("Simply put, because there is no indication that the district court considered the defendant's nonfrivolous arguments prior to sentencing him, we must find error."); *United States v. Mondragon-Santiago*, 564 F.3d 357, 363-64 & n.5 (5th Cir. 2009) (district court committed plain error when it "did not squarely address Mondragon-Santiago's sentencing arguments" and "the court's statement of reasons did not further illuminate its reasoning"); *United States v. Miranda*, 505 F.3d 785, 796 (7th Cir. 2007) (vacating sentence because district court's remarks about defendant's sanity did not show adequate consideration of defendant's "specific arguments regarding the effect of his mental illness on sentencing").

My colleagues see no problem. They dilute *Rita*'s requirement, saying that "[i]f a trial judge states a reasonable decision in support of sentencing and that decision obviously forecloses an objection raised by the defendant," then we must be "very cautious" before finding an absence of adequate consideration. Maj. Op. at 16. Disregarding *Rita*'s careful note that the judge had "asked questions about" and "summarized" Rita's arguments on the record, 551 U.S. at 344-45, the majority invokes *Rita* for a much slacker idea: if the judge "finds that the circumstances do not warrant a below-Guidelines sentence," we may infer consideration of each argument. Maj. Op. at 12. And this applies even though the reasoning offered lies within a framework hermetically sealed from defendant's contentions. Silent disregard now stands in for the reasoned consideration required by *Rita*. Compare *McKeever*, 824 F.3d at 1117, 1126 (remanding despite evidence that district court had an "inkling" of counsel's argument).

As we have never before accepted such a flaccid version of *Rita*, my colleagues are driven to rewrite our precedents. They say that the district court in *Locke* "did not address every mitigating argument offered by the defendant." Maj. Op. at 11. But there we found that the court had specifically addressed "both arguments Locke claimed it ignored." 664 F.3d at 358. The majority also leans on language in *United States v. Borda*, but in that case we determined that the unaddressed mitigation claim was "irrelevant" (i.e., frivolous) and did not demand any consideration. 848 F.3d 1044, 1072 (D.C. Cir. 2017). As for the critical passages in *Mack*, *McKeever*, *Hunter*, and *Fry*—not a word.

Finding no direct authority for their view, my colleagues rely on an analogy to our decisions that a judge need not acknowledge every § 3553(a) factor, reasoning that "[t]he same is true for mitigation arguments . . . ." Maj. Op. at 15; see *Locke*, 664 F.3d at 358. True enough; just as we don't ask courts to formulaically recite inapposite § 3553(a) factors, we require consideration only of *nonfrivolous* arguments. My colleagues also omit our long-standing recognition, paralleling the rule on a defendant's assertion of nonfrivolous objections, that "[w]hen a defendant has [] asserted the import of a particular § 3553(a) factor," the sentencing court *is* required to address that factor. *United States v. Simpson*, 430 F.3d 1177, 1187 (D.C. Cir. 2005); accord *United States v. Brinson-Scott*, 714 F.3d 616, 627 (D.C. Cir. 2013) ("A sentencing court satisfies the requirements of the Sentencing Reform Act *so long as it considers the section 3553(a) factors implicated by the defendant's arguments*." (emphasis added)). So too here.

Though formulating what appears to be a zero-scrutiny principle, my colleagues also adopt a fallback position, saying that in fact the district court "responded" to Pyles. Maj. Op. at 19. First they note that Pyles made "six mitigation arguments" and that his appeal involves just two, *id.* at 4, suggesting that

the court adequately considered the others. But at sentencing Pyles voiced only two reasons for a downward variance—the two at issue here. His other arguments were either specifically couched not as a variance request, Sentencing Tr. at 12, or as responses to issues raised by the district court, e.g., *id*. at 21-22. In terms of nonfrivolous arguments for a downward variance, the district court was batting 0 not .667.

The majority also says that the district court "expressed skepticism towards," labeled as "weak," and "implicitly rejected" Pyles's argument about § 2G2.2. Maj. Op. at 5-6, 16. As for the purported "skepticism," my colleagues rely on district court comments discussing unrelated contentions made by government counsel before Pyles's attorney even had a chance to speak. *Id*. at 5-6 (citing Sentencing Tr. at 9 (rejecting government's argument that Pyles's cooperation and small amount of child pornography merited a lower sentence)); see *id*. at 18-19. In some circumstances a court, already familiar with the sentencing briefs, might preemptively respond to a defendant's oral argument. But the comments the majority cites, and the government arguments they rejected, had nothing to do with the points Pyles's counsel would raise.

Read out of context, there is one point of seeming overlap, the prosecutor's comment that sometimes the Guidelines might be too high, sometimes too low. Sentencing Tr. at 9. But the prosecutor's point, evident in his immediately following statements and echoed in his brief, was that Pyles's sentencing range (save for one enhancement) was appropriate, *id*., and that the judge shouldn't attempt to disrupt § 2G2.2's balancing act by "cherry-picking" among enhancements, Gov't Mem. at 10-11. Where the prosecutor urged disregard of an enhancement (the one for distribution), it was on grounds of the parties' having mistakenly omitted it in reaching the plea agreement, not on any policy dispute with the Guidelines. This was also the *only* enhancement that Pyles did *not* attack on policy

grounds. The government's arguments complemented but in no way coincided with Pyles's.

As for purported responses to Pyles's arguments, the majority describe the district court as having said that "criticisms of the child pornography guidelines were weak in this case." Maj. Op. at 6. Unfortunately their paraphrase bears little relation to the colloquy it describes. Pyles's counsel stated early on that the travel offense is considered to be "more horrific" than possession even though it has a lower aggregate offense level. Sentencing Tr. at 15. As counsel transitioned to his main point, the district court interrupted to say that people might "disagree" about the relative seriousness of each crime but that the court personally felt that the travel conduct is "impossible" to defend. *Id*. at 15-16. The court then doubled back, "But *you could* make an argument—*certainly I'm not telling you you should*. I mean, *you can* certainly make an argument that distri[buting] pornographic images of prepubescent children of a sadomasochistic nature over the internet is even more serious conduct than travelling interstate, per se." *Id*. at 16 (emphasis added). Following that the court returned to its agreement with Pyles's counsel that the travel offense was "so awful." *Id*. These comments—part concurrence, part off-the-cuff advice—offer no assessment of Pyles's mitigation argument. To my colleagues though, this passage is laden with subtext. Later they claim that what the judge really meant here was that the "Guidelines enhancement for sadomasochistic images was appropriate." Maj. Op. at 19. Again, the transcript speaks for itself.

My colleagues' evidence of implicit consideration is no more apt. In a status conference four months before sentencing, the district court mentioned that it had spent "a 'considerable amount of time' reviewing" the case. Maj. Op. at 16 (quoting Status Conference Tr. at 3 (May 28, 2014)). I do not take that generality to be a serious answer to the question whether the

court considered defendant's arguments. At the same status conference, the court ordered a psychological examination to determine "[w]hether or not [Pyles] is a pedophile"—a diagnosis certainly relevant as yielding useful background information, but hardly a substitute for judicial consideration of Pyles's mitigation arguments. *Id.* And my colleagues refer to the judge's comment about getting his "glasses repaired so that he could read everything." Maj. Op. at 17. Pity the defendant in the next case whose judge mentions having just gotten a new hearing aid; shall we then find that the district court assiduously "listened to each argument"? Cf. *Rita*, 551 U.S. at 358. None of these examples evince tacit rejection of Pyles's § 2G2.2 argument, as opposed to simple disregard, let alone the basic acts of acknowledgment that were critical in *Rita*, *Locke*, *Fry*, and *Hunter*. Rather the majority's point seems to be that any judge who read the briefs and sat through oral argument should have picked up on Pyles's arguments. Maj. Op. at 17-19. I agree: the district court should have, but the record offers no evidence that he did.

On the sexual abuse claim, the majority even concedes that the court made no acknowledgment. *Id.* at 20. But they insist that the judge must have read and considered it because the abuse featured prominently in multiple documents that crossed the court's desk: the pre-sentence report; Pyles's first sentencing memorandum; and the psychological evaluation. The majority puts particular emphasis on this last document, reasoning that because the judge ordered the evaluation, he must have considered everything in the ensuing report. But the district court ordered the evaluation *not* to investigate Pyles's mitigation argument, but solely to learn "[w]hether or not [Pyles] is a pedophile." Status Conference Tr. at 3. And at sentencing, its comments about the report were focused on potential recidivism, a matter linked to possible pedophilia. See, e.g., Sentencing Tr. at 9-10. The record thus confirms that the court's interest in Pyles's mental health was specific, not

holistic; there is little in human experience meriting the majority's assumption to the contrary. When you go to the emergency room for a broken ankle, you might well tune out the intake nurse's advice about flu shots.

Had the district court discredited Pyles's abuse or rejected the § 2G2.2 arguments, the majority and I might well have deferred to those decisions. But rather than tackling Pyles's arguments, the court seemed to assume that a downward variance would be inappropriate. It responded to the government's request for leniency by saying, "Essentially, you're asking for a variance of this Court downward. . . . I'm hard-pressed to see how that could possibly be the case here," Sentencing Tr. at 5, followed by, "I don't know how a below-Guideline Range [] sentence could ever deter anyone from conduct of this nature," *id*. at 6, and, "There's no way this Court could ever consider a variance downward in this case. . . . [I]t's not conceivable," *id*. at 9. Having dismissed the government's arguments for a shorter sentence, the court then asked Pyles for his "best argument for downward variance," but it immediately cautioned that variance was "an extraordinary request." *Id.* at 12. The district court's labeling a downward variance "an extraordinary request" and dismissing it as "not conceivable," *id*. at 9, 12, come close to conditioning a variance on "compelling reasons," a condition that our court has found to be an improper "presumption that the Guidelines range is reasonable," *Terrell*, 696 F.3d at 1262. Indeed, after Pyles's arguments for a variance, the district court explicitly expressed its assumption that its choices were only between a Guidelines sentence and an *upward* variance. "[T]his is not a case where the low end of the Guideline Range . . . is appropriate. . . . The challenge this Court has had to wrestle with is whether to vary upward." Sentencing Tr. at 33.

From this record, the majority assembles various conclusory and often unsubstantiated statements and calls it

reasoned decision making. See Maj. Op. at 5. But even apart from the failure to respond to defense counsel's contentions, the district court's discussion at sentencing qualifies as reasonable (if at all) only by the skin of its teeth. The court placed great weight on the need to protect the public, the need for deterrence, and the seriousness of the offense. Sentencing Tr. at 17, 33. It focused particularly on the images, noting that they "aren't just obscene, but they involve prepubescent children and they involve sadomasochistic images on top of that," *id*. at 32. And it stressed the interstate travel, which it saw as "demonstrate[ing] overwhelmingly a commitment to and desire to engage in sexual conduct with a minor," even as it acknowledged that many trips of a length classifiable as interstate in the Washington metropolitan area would elsewhere be purely intrastate. *Id*. at 15-16. Despite repeatedly invoking the seriousness of the pornography offense, the court never even acknowledged that much of what the court found so serious, such as the type of images, is almost universal in child pornography cases. *Commission Report* at iii & n.14. Had the court openly grappled with this issue—explicitly put before it by defense counsel—we would be in a much better position to understand why it chose the sentence it did. See *Bigley*, 786 F.3d at 16.

The court also emphasized the psychological report, which it read as indicating that Pyles "does not think he needs" prison sex offender treatment, that Pyles minimized his offenses, and that Pyles "blam[ed] [his inclinations] on drug usage," an excuse that the court rejected. Sentencing Tr. at 9-10; see *id*. at 11. On all these issues the court to a considerable degree distorted both the report and the defendant's position. In criticizing defendant for purportedly blaming his drug addiction, the court disregarded Pyles's argument that both his drug use and his criminal behavior followed directly from the larger issue—his childhood sexual abuse—which the court persisted in ignoring. See Defendant's Mem. at 13-14.

(Because the sex abuse led to Pyles's criminal behavior as well as drug use, the majority appears ready to allow any district court comment about the drug use to double as a comment about the sex abuse. Maj. Op. at 20. Applying their reading consistently would lead to very curious results, such as the district court implying that child sexual abuse cannot be "a factor in a person's desire to engage in pedophilia." See Sentencing Tr. at 10 (discussing "drug usage").)

The court's repeated emphasis on Pyles's unwillingness to undergo sex offender treatment was also misplaced. After the district court insisted that the report showed no "hope" of Pyles rehabilitating, even the prosecutor politely chided, "I'm not sure that the report makes it quite as clear that [Pyles] would not be amenable to treatment." *Id*. at 10. The psychologist in fact emphasized that Pyles had participated willingly in the evaluation and suggested that Pyles's reticence about sex offender treatment could be addressed with therapy. The report concluded that Pyles would have a "low" risk of recidivism if he undertook both sex offender and substance abuse treatment but that successfully completing only one, or neither, would create, respectively, a moderate, or high, risk. Gov't Supplemental Sentencing Mem. at 3. Although Pyles had expressed reticence only about sex offender treatment, the court seems to have assumed that Pyles would refuse both that and drug treatment, thus leading to the "high" risk outcome, or that failing sex offender treatment alone would create such a risk. See Sentencing Tr. at 11; see also *id*. at 16 ("He could be out there, once out of jail, posing the same risk.").

In his allocution Pyles himself explained that his initial misgivings about sex offender treatment stemmed from the prison program's penile plethysmograph procedures, but said that after talking with others, he had decided to "participate in the sex offender treatment regardless." *Id*. at 27. At the time of sentencing, therefore, Pyles had apparently withdrawn his

misgivings on the sex therapy. Quite a few courts of appeals share those misgivings about plethysmography and have vacated post-release conditions making it mandatory. See *United States v. McLaurin*, 731 F.3d 258, 263-64 (2d Cir. 2013); see also *United States v. Medina*, 779 F.3d 55, 71 (1st Cir. 2015); *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006). So a degree of hesitance about such a procedure can hardly be held against a defendant, especially when in the end he accepts the psychologist's recommendation to undergo therapy. See Sentencing Tr. at 27. As further evidence of his interest in therapy, Pyles asked the court (after sentence was announced) to recommend him for a Bureau of Prisons drug treatment program. *Id*. at 39.

Beyond the court's unmoored discussion of the psychologist's report, its oft-repeated concerns about recidivism appear to have been based more on intuition than information. See Dissent, *supra*, at 20. The Commission has compiled considerable data on the subject. A study of 610 defendants convicted of "non-production" child pornography offenses, tracked for an average of eight and a half years after release, yielded a 7.4% rate for "sexual recidivism"—encompassing 3.6% for "contact" offenses, 2.3% for new child pornography offenses, and 1.5% for "non-contact sex offenses involving obscenity or commercial sex." *Commission Report* at 294-301. "General" recidivism of sex offenders, encompassing all crimes, is obviously higher but still in line with that of other defendants. *Id*. at 308-10; see also Matthew R. Durose et al., Bureau of Justice Statistics, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, at 8 (2014) (sexual assault offenders' recidivism lower than that of assault or robbery offenders). As one district court observed as part of an exhaustive analysis of the subject, "Recent research suggests that the recidivism rate of child pornography offenders may be low, with most child pornography viewers unlikely to engage in future sexual

offenses." *United States v. R.V.*, 157 F. Supp. 3d 207, 240 (E.D.N.Y. 2016).

These studies are not the end of the matter. Actual recidivism may be higher than known recidivism, given the underreporting of sex crimes. *Commission Report* at 295 & n.12. And general recidivism is somewhat higher for defendants whose criminal history category is (like Pyles's) above I. *Id*. at 308-10. The court's individualized assessment of the defendant is certainly relevant too, but here the person in the courtroom with possibly the best opportunity to aid in such assessment was the prosecutor, who had "handled these cases [] exclusively for a number of years" and argued consistently for a sentence below the corrected Guidelines range. Sentencing Tr. at 6.

Finally, as the majority repeatedly mentions, the court intended to cancel out the "huge break" that Pyles received through the government's agreeing to a plea without a distribution charge, thereby sparing Pyles, as the judge saw it, the five-year mandatory minimum attached to distribution. *Id*. at 7; Maj. Op. at 5, 19, 21. In fact the *lower end* of the range that Pyles agreed to (78-97 months) was a year and a half more than the mandatory minimum, and the sentence Pyles eventually sought (87 months) was well beyond that minimum. Pyles was spared the mandatory minimum only in a nominal sense.

If the district court's reasoning seems incomplete, there is good reason for that: the court never responded to two arguments that intersected with most of the issues in this case. The court clearly erred by not addressing Pyles arguments and leaving us with the type of incomplete record that *Rita* and its sequels in our and other circuits sought to prevent.

More generally, the majority's new presumption cannot be reconciled with the goals of federal sentencing reform. As is well known, the Sentencing Reform Act sought to limit sentencing discrepancies arising from the predilections of individual judges. To the extent that the Act's solution was mandatory Guidelines, it collapsed from constitutional infirmities, which the Supreme Court solved by removing the Guidelines' mandatory character. *Booker*, 543 U.S. at 245. By upending the relationship between sentences and the Guidelines, *Booker* necessarily reset the dynamic between district and appellate courts. See *Gall*, 552 U.S. at 46 ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."). The Court read the statute as establishing review not only for substantive reasonableness but also for conformity to the procedural requirements of law— most obviously such matters as proper calculation of the Guidelines sentence but also "fail[ure] to consider the § 3553(a) factors" and "fail[ure] to adequately explain the chosen sentence." *Id*. at 51. Flowing from that latter requirement is *Rita*'s more specific rule that the court "satisfy the appellate court that he has considered the parties' arguments." See *Rita*, 551 U.S. at 356. As the Court has explained, *Rita*'s procedural check is needed "to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. Indeed, one might add, the reality of fair sentencing.

"Although the federal system's procedural rules establish [relatively] gentle[] checks on the sentencing court's discretion . . . , they nevertheless impose a series of requirements on sentencing courts that cabin the exercise of that discretion." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). The requirement to consider the § 3553(a) factors is procedural but it guides the substance of the judge's reasoning; likewise the requirement to consider nonfrivolous arguments helps ensure

that sentences are driven by context, not caprice. See generally *Gall*, 552 U.S. at 51 (procedural review is to precede reasonableness review).

In contrast to this rigorous procedural review, the appellate courts' post-*Booker* role in monitoring for *substantive* reasonableness has been inherently weak. See generally *id*. at 51-52. With a swarm of factors likely to be relevant, many of them involving subtle questions of degree, reversal for unreasonableness would be likely only to replace a single judge's weighing of imponderables with a three-judge panel's weighing. Appellate intervention in such circumstances is unlikely to provide much guidance for lower courts and even more unlikely to develop useful rules of law. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). We recognized the comparative advantages of the two courts early in the post-*Booker* era, see *United States v. Gardellini*, 545 F.3d 1089, 1093 n.3 (D.C. Cir. 2008), and in the almost ten years since then we appear to have never found a sentence substantially unreasonable (apart from cases such as *Pickett* where the unreasonableness stemmed from an error of law).

With substantive discretion almost entirely in the hands of district courts, any useful role for the courts of appeals in "promot[ing] the perception of fair sentencing" lies in their enforcement of the statute's procedural requirements. See *Gall*, 552 U.S. at 50. The panel's readiness to gloss over a district court's non-recognition of a serious argument for (relative) leniency goes far to abdicate that role and thus restore the status quo ante the Sentencing Reform Act: virtually untrammeled district court authority over sentences. Perhaps that outcome would be preferable on broad jurisprudential grounds, but it is not what Congress and the Supreme Court have wrought. The majority discards the basic procedural requirements and thus sacrifices the interests of consistency, coherency, and clarity of thought.

The majority's new presumption is particularly ill-advised when dealing with a sentence derived from § 2G2.2, which exists in spite of the Commission's judgment as to the sentence called for by the § 3553(a) factors. Though § 2G2.2 originated with the Commission, its content has been repeatedly diverted from the Commission's reasoning by congressional mandates. See generally U.S. Sentencing Commission, *The History of the Child Pornography Guidelines* (Oct. 2009). And see *United States v. Grober*, 624 F.3d 592, 608 (3d Cir. 2010) (agreeing with district court comment that "to say that the final product is the result of Commission data, study, and expertise simply ignores the facts"). The court in *Dorvee* found that in view of these exercises of *force majeure* the Guideline was one "that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." 616 F.3d at 184. The Second Circuit has recently followed through on its warning in *Dorvee*, reversing a child pornography sentence for relying too heavily on § 2G2.2 and its "all-but-inherent" enhancements. *United States v. Jenkins*, 854 F.3d 181, 188-91 (2d Cir. 2017). This court need not go so far here, but *Dorvee* and *Jenkins* mark § 2G2.2 cases as among the least suitable for a new policy of indifference to the modest requirements of procedural regularity. Compare *Rita*, 551 U.S. at 350 (presumption of reasonableness appropriate when judge's finding and "Commission's judgment" overlap).

\* \* \*

The other elements of plain error are easily met here. The third element, that it "affected substantial rights," requires "a reasonable likelihood that the error affected the outcome." *Terrell*, 696 F.3d at 1263 (internal quotation marks omitted); see *Burroughs*, 613 F.3d at 245. The defendant's burden of "showing prejudice" is "somewhat lighter in the sentencing context than for errors committed at trial." *Burroughs*, 613 F.3d at 245 (internal quotation marks and alterations omitted).

The defendant "need not even demonstrate that it is 'more likely than not' that his sentence will change." *United States v. Williams*, 358 F.3d 956, 966 (D.C. Cir. 2004). Because Pyles's variance requests double as requests for a shorter within-range sentence, "[t]he question isn't whether defendant's prison term would have been drastically shorter—just whether it was reasonably likely that the prison term would not have been as long." *In re Sealed Case*, 573 F.3d at 852. Given the court's omission here of any reference to two major contentions going to the just application of its discretion, and its troubling insistence that a downward variance was "not conceivable," Sentencing Tr. at 9, there is a "reasonable probability that the court might not have imposed" the sentence "if it had fulfilled its obligation" to consider Pyles's nonfrivolous arguments for a variance, *Burroughs*, 613 F.3d at 245 (quoting *United States v. Perazza-Mercado*, 533 F.3d 65, 78 (1st Cir. 2009)).

The final consideration for plain error is whether the procedural flaw "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hunt*, 843 F.3d 1022, 1029 (D.C. Cir. 2016) (alteration omitted). In the sentencing context, the first three plain error elements—an error that was clear and reasonably likely to have affected a prison term—all but establish the fourth. See *Terrell*, 696 F.3d at 1263. An inadequate record seriously affects the judicial process, because "a reviewing court and the public cannot adequately evaluate the judge's sentence selection." *Bigley*, 786 F.3d at 16; accord *United States v. Akhigbe*, 642 F.3d 1078, 1087 (D.C. Cir. 2011) (explaining that a "failure to explain adequately the sentence" meets the "seriously affecting" element when it "precludes appellate review" (brackets omitted)). That is certainly the case here. Having found that all four elements of plain error are present, I would vacate and remand for the district court to consider Pyles's arguments.